NEW ORLEANS, FEBRUARY, 1887.        107

Handy et al. vs. New Orleans et als.

## No. 9779.

### THOMAS H. HANDY ET AL. VS. THE CITY OF NEW ORLEANS ET ALS.

Tax-payers have a standing in court to contest upon proper charges, the validity of a municipal ordinance and contract executed under it, whenever its enforcement may increase the burden of taxation.

A district court, the lower limit of whose jurisdiction is fixed, has jurisdiction to pass upon such controversy, when the matter in dispute, which is the value of the contract, exceeds that limit, and the Supreme Court has jurisdiction, on appeal, when that value exceeds two thousand dollars.

A petition of taxpayers discloses a cause of action, which charges that a municipal corporation has, in excess of its powers and in violation of prohibitory provisions in its charter, passed an ordinance under which a contract of lease was entered into.

Courts of justice have the right to sanction and to determine such controversies, but in the exercise of that power ought to act with great caution and have due regard for the legal discretion with which the Legislature may have clothed such corporations, which are in reality, State functionaries, whose acts must be respected whenever they are done in furtherance of delegated authority.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Kennard, Howe & Prentiss* and *White & Saunders,* for Plaintiffs and Appellants.

*W. S. Benedict, Bayne & Denègre* and *Farrar & Kruttschnitt,* for Defendants and Appellees:

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This cause comes up on an exception, to be determined on the face of the papers.

It is an action brought by three resident taxpayers of New Orleans, in their own behalf and in that of all others similarly situated, for the annulment of a municipal ordinance and of the extension of a lease, made under it, of the wharves on the river bank, in favor of certain named parties.

The city and the lessees were made defendants and a number of citizens intervened, joining in the demand.

An elaborate petition guardedly and sharply drawn, sets forth the *gravamen* of the complaint substantially, to be :

That the city has violated the mandatory provisions of her charter, in disregarding the forms prescribed as conditions precedent, *sine quibus non,* for the letting or farming out, of the wharves in question, *namely :* In not having invited competition by publication or otherwise, or at least in fixing excessive wharfage rates, which are destructive of the interest of commerce and of the inhabitants, and which enable the lessees to realize annually a profit nearing $100,000, and in

not imposing obligations such as the construction and repair of sheds, etc., which would, if exacted, redound to public welfare.

The petitioners further aver, that other parties have made to the city more liberal offers; that they themselves have proposed to accept the lease on more advantageous terms to the city and less onerous on the commercial community, one of them going so far as to tender a *bonus* of $75,000 to the city to secure a preference; that had competition been permitted, the leasing might have been made with wharfage rates at least ten per cent lower, to the great benefit of the commerce and business in New Orleans and of petitioners and of other taxable inhabitants; that the offers, proposals and tenders aforesaid were not considered and were ignored.

The petitioners further allege that the matter in dispute exceeds $5000, and that the interest of each exceeds $2000.

Upon these averments an injunction is prayed for to prevent the execution of the lease, which had not yet begun to run, and a judgment is asked annulling the ordinance and new lease, and perpetuating the injunction.

The lessees excepted, pleading want of capacity in plaintiffs, misjoinder and no cause of action. The city urged like exceptions, save that of misjoinder.

The district judge declined the writ, and dismissed both the petition and intervention.

He considered that it does not appear that the plaintiffs, or either of them, have a sufficient pecuniary interest to maintain their action in any court the jurisdiction of which is limited to a specific sum.

He further considered that, even if plaintiffs have shown such interest, the petition discloses no cause of action.

The plaintiffs appeal.

The record does not show that any plea to the jurisdiction was filed and sustained; but here, certain counsel for the defense admit formally, while the others deny absolutely, any jurisdiction in the lower court, and *a fortiori* in this court, over the controversy, even if a cause of action be disclosed.

I

The first question to be determined is whether the plaintiffs have a standing in court.

It is unnecessary to indulge in any discussion of the long-mooted, but now apparently settled question: Whether taxpayers, or even one of them, have a right to contest judicially, as plaintiffs, the validity of

municipal ordinances, at which they level the charge of illegality, for any cause.

The sedate doctrine, after much contrariety of opinions and considerable vascillation among the courts, seems to be : That the right of property holders, or taxable inhabitants, is recognized, to resort to judicial authority to restrain municipal corporations and their officers, from transcending their lawful powers, or violate their legal duties, in any unauthorized mode which will increase the burden of taxation, or otherwise injuriously affect taxpayers and their property ; such as an unwarranted appropriation and squandering of corporate funds, an unjustifiable disposition of corporate property ; an illegal levy and collection of taxes not due or exigible, etc.  We accept this conservative doctrine.

The recognition of that privilege is predicated on the principle, that it is proper that those who may be immediately affected by the abuse, should be armed with the power to interfere, directly and at once in their own name, in a mode which affords an easy, prompt and adequate preventive relief against an evil which might otherwise entail irremediable wrong.

The exercise of that right or privilege is the more justified when the law does not vest a State or an officer with the power to seek redress.

In such instances the action is regarded as having a public character and as being a public proceeding in which the public complains. Crampton vs. Zabrinski, 101 U. S. 601 ; New London vs. Brainard, 22 Conn. 552 ; Baltimore vs. Gill, 31st Md., 375 ; 97 Ind., 1 ; Cooley on Tax, 548 ; Dillon on Mun. Corp., 914 to 937, and authorities in notes.

Our legislation is silent on this subject.  Hence, taxpayers enjoy the prerogative of protecting themselves by their own act in proper cases. This conclusion is fortified by additional considerations suggested by the instant case itself, which will now be developed.

Let it be supposed that the city authorities were to consider the ordinance and lease attacked as *ultra vires,* and the corporation was judicially to demand their annulment, could the lessees, for one moment, be heard to except to the want of capacity of the city, to ask relief and to object to the jurisdiction of the court ?

Unquestionably not, for two obvious reasons, that a party to the contract has the undeniable right to demand judicially its annulment for a proper cause. and that in such a case a court of limited lower jurisdiction, but unbounded otherwise, would surely be competent to pass upon the validity of a contract of a value far in excess of the jurisdictional initial point.

In this case the execution of the ordinance under the lease is stated as yielding a profit nearing annually $100,000. The contract which is the matter in dispute, clearly exceeding $2000, the lower court and this court have jurisdiction over it.

It is quite apparent that in such a case had the lessees been cast, they would indisputably have had the right to appeal, and so of the city if defeated. The law in this regard cannot, and does not, discriminate between litigants by denying to the one what it accords to the other.

If the taxpayers have the privilege of doing that which the city could have, but has not, done, and if the lessees could have appealed, it would indeed be monstrous to say that the plaintiffs are denied the same privilege.

It is true that the plaintiffs have not alleged in explicit terms that, owing to the charged violations of the law by the city authorities, the burden of taxation which they and other taxpayers are required to bear will be increased, and that they will be injuriously affected thereby beyond measure, but the plaintiffs have done what is equivalent to it, and what is an unavoidable corrollary.

They have stated facts, which, if true, may, and no doubt do, materially cripple to some considerable extent, the commercial business of the city and deprive the city of important revenues which otherwise might be raised by taxation, both on property and persons in the shape of taxes on stock in trade or of license.

The right which the city could have, but has not exercised, the taxpayers can therefore judicially champion and vindicate in proper cases, just as fully and effectually as though the corporation itself had brought the action.

Hence the plaintiffs have a standing, and both courts have jurisdiction over the contention.

An expression of opinion on the lack of competency in the lower and in this court, was deemed necessary to enable us to pass on the merits of the exception of no cause of action.

The plea of misjoinder is mentioned here merely to show that it was noticed and considered.

It is impossible to perceive on what it rests.

The plaintiffs had a right to come together, and the intervenors had a right to join them. The defendants are the city, and the lessees were necessary parties, and had to be brought in.

II.

The second and only next question is: Whether the plaintiffs have

set forth averments sufficient to justify the annulment of the ordinance and of the lease attacked.

The grounds relied on are simply : That the city has refused or failed to invite competition, has fixed most onerous wharfage charges, has leased the wharves as a whole, and not in sections, and has not imposed obligations which ought to have been exacted; and that it has thus inflicted injury on the commercial welfare, on petitioners and other taxpayers.

The serious charge is, after all, that the city has maladministered the public thing respecting the lease of her wharves.

Under such a complaint can the petitioners be heard ?

If it could be questioned whether the city, in the exercise of the police power, which is inherent in all municipal corporations—could build and keep wharves and exact compensation for the use of the facilities derived from them by those enjoying the same ; or, convey and transfer unto another that right—all discussion on the subject would be at once hushed by the positive and express delegation of authority in that respect, made to the city by the sovereign, in the charter under which she breathes, moves and acts.

The eighth section provides, that the Council shall have the power to prescribe and collect wharfage and levee dues and erect sheds over the wharves and buildings to protect merchandise and to make such charges therefor *as will pay for the construction, keeping in repair, lighting and policing of such wharves and sheds, and no more.*

The charter also provides that the city may lease or farm out the wharves and landings in section for a period not exceeding ten years, to such persons as will bind themselves, with security, to construct and keep in good repair such wharves and landings, and construct and keep in repair sheds over the wharves, and light the same and pay for the cost of policing the same for such *just* and *reasonable* charges on vessels and merchandise, or either, for the use of the wharves and sheds, as may be fixed in advance by the Council, and with such specifications as may be required by them.

It is apparent that the city was formally vested by the Legislature with the power of administering by herself or by the agency of others, the wharves and landings dedicated to commerce.

There can be no doubt, then, that what the city has done in this regard, in the exercise of the police power can no more be questioned than if the State herself had acted directly.

The acts of the State functionary in furtherance of delegated authority, become the acts of the sovereign.

It is claimed, however, that where a municipal corporation is empowered to impose a wharfage charge, as a compensation, for keeping the wharves in a proper condition, for the safe and expeditious shipping and landing of merchandise, a court will not undertake to fix any limit to the amount which the municipal authorities may exact for that purpose.

In support of that doctrine reference is made to the case of First Municipality vs. Pease, 2 Ann. 538.

An examination of that decision shows that the question presented and determined, received full consideration.

After dilating on the dire consequences which, it was apprehended, were to flow from the municipal acts charged against, the Court said:

" The remedy for this can be had elsewhere than from the judicial power.  With more enlarged views of public policy, the electors may apply at once a remedy to the evil, or the Législature itself may confine the exactions of the municipalities within fixed reasonable limits."

The correctness of the ruling and the soundness of the views supporting it are not questioned, but the material fact on which the same rest, must not be lost sight of.

The provisions of law considered and expounded, placed no restraint on the municipal corporation and left the exercise of the powers delegated exclusively dependent on its discretion and sense of justice and propriety.

The section of the charter (Sec. 20—1836), enumerated the powers vested in the City Council, the first of which was " to fix a uniform rate of wharfage to be paid by ships, steamboats and other crafts mooring in front of all parts of the city."

But that legislation did not long survive the ruling made in 1847, for, in 1850, the consolidation charter placed a restriction requiring that the rate be a fixed sum for each day the crafts would remain in port.

This was not altered by the supplementary charter of 1856, but in the charter of 1882, No. 20, p. 21, Sec. 8, it is distinctly provided that, while the Council may farm out the wharves and landings, they can do so only on such just and reasonable charges and specifications as will pay for the construction, keeping in repair, lighting and policing of such wharves and sheds, and no more, and as they may fix in advance.

However correct the doctrine be which was announced in 2 Ann., it cannot be applied to a case like the instant one, in which a shackled municipality is arraigned for disregard and violation of prohibitions

placed on the exercise of certain administrative powers with which it is vested.

The plaintiffs charge that the lease in question was granted without competition ; that the wharfage rates fixed are *unjust* and *unreasonable* ; that the wharves ought to have been farmed out by sections and not as a whole ; that the obligation of constructing sheds and keeping them in repair was not exacted, etc.

The district judge did not pass upon the sufficiency of the allegations of the petition to warrant the judgment sought. He held that the plaintiffs could not be heard, first, because the court had no jurisdiction, and next, because the court cannot go behind the ordinance and inquire into the validity of the lease.

We cannot pass presently upon the sufficiency of each and every allegation of the petition, but will say that, if the plaintiffs succeed in establishing them all, or one or more sufficiently to justify the annulment of the ordinance and contract under it, they will be entitled to judgment, because, surely the petition discloses a cause of action in at least one of its averments, and the courts have the power to sanction and determine an inquiry into the right of a municipal corporation to transgress mandatory prohibitions, or provisions of its charter, touching the administration of its affairs.

In thus holding, we think it proper to say that courts, in passing upon such matters, ought to do so with great caution and due regard to the legal discretion which the sovereign may have vested in such corporations.

Under the circumstances, a trial on the merits becomes necessary.

It is therefore ordered and decreed that the judgment appealed from be reversed ; and it is now ordered and decreed that the exceptions filed to the petition of plaintiffs be overruled, and that the defendants be ordered to join issue by answer, and that the case be remanded to the lower court, to be further proceeded with according to law, the costs of appeal to be paid by the appellees, and those of the lower court to abide the final result of the case.