Statement of the Case.
MONEOE, J.
Plaintiffs, 16 in number (who were afterwards joined by other persons intervening), alleging injury and prejudice to themselves as citizens and property owners of the parish of St. Landry, brought this suit on July 30, 1910, for the purpose of having declared repugnant to the Constitution of the state, and perpetually enjoining the operation of, a certain act (No. 15) passed by the General Assembly at the regular session of 1910, which purports to create from the citizens and territory of said parish, including plaintiffs and interveners and their property, a new parish, called “Evangeline.” The act is entitled, and provides, in substance, as follows:
“An act to create the parish of ‘Evangeline' and to pzovide for the organization thereof. Due .notice having been given as required by article 50 of the Constitution, as shown by affidavit hereto attached.
“Section 1. * * * That a new parish * * * is hereby created out of the western portion of the parish of St. Landry, to be called and known as the parish of ‘Evangeline’ [and then follow the boundaries],
“Sec. 2. That the seat of government shall be Ville Platte, and that the parish shall form part of the 16th, judicial, third, Supreme Court, 14 senatorial, seventh, congressional, first, circuit court, and second, railway commission, dis-
“See. 3. That, of the four members of the lower house, now representing the parish of St. Landiy, one, shall represent, and shall henceforth be elected to represent, the parish of Evangeline.
“Sec. 4. That the Governor shall appoint five persons to serve as police jurors until their successors shall have been elected and qualified, in 1912, and shall also appoint a register of voters; that the jurors, so appointed, shall meet, within ten days, and organize themselves into a police jury, which body shall divide the parish into wards, designate the places for holding elections, etc., and shall exercise the same powers as other like bodies.
“Sec. 5. That the police jury shall, at its first meeting or as soon thereafter as possible, fix a date for the holding of a special election for clerk of court, sheriff, assessor and all other offi *23 cers, who, under existing laws, are required to be elected by the people, such election to be not sooner than 60 days after it shall have been ordered, and the returns to be canvassed and promulgated and the candidates, who may be elected, qualified, by said police jury, as soon as possible after the election.”
Section 6: “That, immediately after the permanent organization of the parish of Evangeline, which shall be on January first, A. D. 1911, by the election and qualification of its officers,” the clerk of the district court and ex officio recorder of St. Landry shall transmit to that officer of the new parish certain judicial records, which are described.
Section 7 provides for the transmission to the recorder of the new parish of a transcript of the conveyence and mortgage records and of original acts of mortgage and conveyance relating to property therein situated.
Section 8: That no privilege or mortgage on property in the new parish shall lose the effect of its inscription merely because not inscribed in said parish, provided it shall have been legally inscribed in the parish of St. Landry, and that the certificate of the recorder of St. Landry, with respect thereto, shall be received where such certificates are required.
Section 9: That the sheriff and ex officio tax collector of St. Landry shall transmit to that officer of the new parish a list of the unpaid taxes on property therein situated, and that said officer shall collect and account for the same.
■ Section 10: That the school fund shall be provided, in the new parish, as in other parishes.
“Sec. 11. * * * That, as soon as said parish of Evangeline has been permanently organized under the special election hereinbefore provided, it shall be the duty of the police jury of said parish to institute judicial proceedings, in the 16th judicial district court for the parish of St. Landry, for the purpose of ascertaining and settling, in a just and equitable manner, the proportion of the obligations of St. Landry parish which should be assumed by the parish of Evangeline, and for the purpose of ascertaining the proportion of the assets and property of St. Landry parish to which the said parish of Evangeline should -be entitled, and, for the net amount to be so ascertained to be due by either parish to the other, the debtor parish shall make provision for payment by such means as shall be legal and appropriate, The said suit shall be entitled ‘The Parish of Evangeline against the parish of St. Landry,’ and shall be prosecuted to as speedy a determination as possible.
“See. 12. That all expenses necessary and incidental to the organization of the parish of Evangeline shall be paid by said parish.
“Sec. 13. That all laws or parts of laws in conflict herewith be and the same are hereby repealed.”
Act No. 27 of the same session is entitled:
“An act to provide for the organization of new parishes; for the appointment and election of officers therefor; for the transferring of the records and the adjustment of the affairs of the new parish or parishes with the parish or parishes out of which the said new parish or parishes is, or are, formed.”
And the text provides for the organization of new parishes in general, and is much the same as that of the Act No. 15 above referred to, though somewhat more elaborate in its details.
Act No. 75, of the same session, is a joint resolution proposing an amendment to article 18 of the Constitution, and it contains, among others, the following provisions, viz.:
“That, if there is more than one representative in a parish from which the larger portion of the territory is taken for the purpose of creating a new parish or parishes, one of such representatives may be apportioned to the new pansu in the same act which creates the parish. That any act, passed by the General Assembly of the state of Louisiana, at its session of 1910, creating a new parish or parishes, and assigning a representative to each is hereby ratified and confirmed.”
Act No. 311, of the same session, is a joint resolution proposing an amendment to articles 107 and 108 (as amended pursuant to Act No. 216 of 1906), and providing (inter alia) as follows:
“Art. 107. The state shall be divided into not less than twenty nor more than thirty-two judicial districts, the parish of Orleans excepted. Until otherwise provided by law, there shall be thirty districts.'
“Art. 108. * * * The parishes of St. Lan *25 dry and Evangeline shall compose the Sixteenth •district. * * *
“Provided further that this act shall take ■effect from and after January 1, 1912.”
This suit, as we have stated, was instituted on July 30, 1910, after the legislation thus referred to had been, enacted, but, prior to the election, on November 8,1910, at which the proposed amendments to the Constitution were adopted. The trial did not, however, take place until afterwards, to wit, on November 12, 1910, and the case was finally submitted on November 22, 1910, and decided on December 6th following.
The note of evidence of November 12th ■discloses the following agreements of counsel, to wit:
“It is agreed and stipulated: between the parties plaintiff and defendant * * * that this case shall he held open until the Governor of Louisiana issues his proclamation declaring the result of the election held on November 8, 1910, passing upon the amendments of articles 18 and 107 of the Constitution of 1898. When this proclamation is issued, the clerk is authorized to take a copy from the newspaper and file it in the record and this shall be recorded ‘(received)’ as authentic. Upon this evidence being filed in the record, the case will then be considered as submitted to the court for decision.
“It is agreed by the defendants that all of the plaintiffs, as well as the interveners, are residents of the parish of St. Landry as constituted 'before the act creating the parish of Evangeline, and would be included in the territory composing the proposed parish of Evangeline, both as to their persons and property. * * *”
It is admitted that the two parishes, St. Landry and Evangeline, as left, and as created, by the act of 1910, have each the area and population required by the Constitution,
It is further admitted:
“That there was an election called' in the parish of Evangeline which was held on the ■8th day of November, A. D. 1910, at which election all the parish officers for the parish of Evangeline were elected, including as a representative, one of the representatives who had been elected for the parish of 'St. Landry.”
And it appears from the Governor’s proclamation that the two amendments' to the •Constitution were adopted; the parish of St. Landry giving a favorable majority for each. Prior to that time the provisions of the Constitution upon the subject of the creation of new parishes were general in character, and were to be found in articles 277 and 280, which read:
“Art. 277. The General Assembly may establish and organize new parishes, which shall be bodies corporate with such powers as may be prescribed by law, but no new parish shall contain less than six hundred and twenty-five square miles nor less than seven thousand inhabitants; nor, shall any parish be reduced below that area or number of inhabitants. * * *”
“Art. 280. Whenever a parish shall be enlarged or created from territory contiguous thereto, it shall be entitled to a just proportion of the property and assets and be liable for a just proportion of the existing debts and liabilities of the parish, or parishes, from which such territory shall have been taken.”
It was shown on the trial of the case that plaintiffs are property owners and taxpayers of the proposed parish of Evangeline, and a number of witnesses were examined who gave their opinions as to the probable effect upon the value of the property situated in that territory of the creation of the new parish; the preponderance of opinion being that it will prove favorable.
There was judgment in the court a qua rejecting plaintiffs’ demands and dismissing their suit, and they have appealed.
' Opinion.
On Motion to Dismiss Appeal.
Defendants move to dismiss the appeal on the- ground that plaintiffs do not show a pecuniary interest to the amount of $2,000, and hence that this court is without jurisdiction ratione materise.
It has, however, been held on more than one occasion that:
“Taxpayers have a standing in court to contest, upon proper charges, the validity of a municipal ordinance and contract executed under it, whenever its enforcement may increase the burden of taxation.”
And that:
“A district court, the lower limit of whose jurisdiction is fixed, has jurisdiction to pass *27 upon such controversy when the matter in dispute which is the value of the contract exceeds that limit, and the Supreme Court has jurisdiction on appeal when that value exceeds $2,000.” Handy et al. v. New Orleans et al., 39 La. Ann. 107, 1 South. 593; Conery et al. v. Waterworks Co. et al., 39 La. Ann. 770, 2 South. 555: State ex rel. Orr v. City, 50 La. Ann. 880, 24 South. 666; Sugar v. City of Monroe, 108 La. 681, 32 South. 961, 59 L. R. A. 723.
The principle involved is the same-where the taxpayer contests the constitutionality of a statute, by the enforcement of which the burden of taxation may be increased, and under the rulings referred to the test of jurisdiction is the amount involved to the public, rather than that which the taxpayer individually may have at stake. In the instant case, we have no doubt that the people of the parishes of St. Landry and Evangeline have an interest exceeding $2,000 in value in the decision of the question presented.
The motion to dismiss the appeal is therefore denied.
On the Merits.
The statute which is here attacked as unconstitutional having been ratified and confirmed by an amendment to the Constitution, whereby it has been made, in effect, part of that instrument, there is no basis left for the attack to rest upon, and the superstructure falls with the foundation.
If (as is the ease) the Constitution, as amended, provides that for the purposes of the creation and organization of the parish of Evangeline the parish officers shall be appointed or elected in a certain manner and at a certain time, of what avail is it to invoke general and pre-existing provisions of the same Constitution concerning the appointment or election of officers for parishes already created and organized, which provisions, by reason of the amendment and of the difference in the subject-matter, have no application to the particular case for which the amendment provides? .
The learned counsel insist that the amendment here in question should be held to apply to only so much of the statute to which it refers as provides for the representation of the new parish in the General Assembly because (they say) that was the only constitutional difficulty presented.
The particular language of the amendment, which is to be interpreted, reads;
“That any act passed by the General Assembly of the state of Louisiana, at its session in 1910, creating a new parish or parishes and assigning a representative to each, is hereby ratified and confirmed.”
And we do not feel authorized to hold that the ratification and confirmation thus declared was intended to apply to anything less than the “any act” mentioned, to which the words “creating a new parish or parishes” occupy the same descriptive relation as the words - “assigning a representative to each.”
It may be, as counsel think (though we find it unnecessary to express any opinion upon the subject), that, save for the matter of representation, the parish of Evangeline might have been established and organized without amending the Constitution, but that possibility did not deprive the General Assembly of the authority to propose, or the people of the state of the power to adopt, any such amendment, not in conflict with the Constitution of the United States, as they saw fit. And they saw fit to propose and adopt an amendment which practically incorporates in the Constitution the Act No. 15 of 1910. The method pursued was, no doubt, unusual, but the act was approved on June 15th, whilst the Act No. 75, proposing that it be ratified and confirmed as a constitutional amendment was approved on June 29th, was submitted to the electors of the state for their action on November 8th, following. The members of the General Assembly knew, therefore, definitely to what legislation the .amendment referred, and no complaint is made that the electors were not equally well informed.
*29 It is objected that so to construe the amendment as to make Act No. 15 effective from the date of its promulgation would be to violate the canons of construction which discountenance the giving to legislation a retroactive effect, or such effect as would bring a constitutional amendment into conflict with the general policy of the Constitution amended. No one doubts, however, that retroactive laws may be passed, so long as they do not impair the obligations of contracts or devest vested rights, and no one can deny that when such a law is passed by competent authority, and the intention that it shall operate retroactively is clearly expressed, it becomes the duty of the courts to constrde and apply it according to the intention of the maker. In the instant case the ratification and confirmation of Act No. 15 of 1910 can mean nothing else than that its infirmities, if any existed, are cured, and that it is to be regarded as having been constitutional from the beginning; and we do not find that any contract is thereby impaired or vested right devested. Beyond that, the amendment deals exclusively with the subject of the creation and organization of new parishes, concerning which there is nothing in the Constitution save the bare delegation of power to the General Assembly to establish and organize such parishes, and the provision to the effect that the new parish and the old one (from which the new one is taken) shall make an equitable settlement with regard to the assets and liabilities of the latter, and we find no conflict of policy between those provisions and the amendment. Other articles of the Constitution, such as those which provide at what time the officers shall be elected, etc., apply to parishes which are already established and organized, and since January 1, 1911, they apply equally to the parish of Evangeline. There is therefore no conflict between those articles and the amendment, because, in so far as they differ, they deal with different subjects.
It is said that article 114 of the Constitution prohibits interference with the judge of the district court, either as to his territorial jurisdiction or his compensation during the term for which he was elected. But (waiving the fact that the supposed interference was by the Constitution itself, and not by mere legislative enactment) a sufficient answer to that contention is that there was no such interference, the creation of the new parish, within the limits of the old, making no change in the territorial jurisdiction of the judge, and there having been no attempt to make any change in his compensation.
It is further said that the amendment to article 108, redistricting the state and assigning the parish of Evangeline to the Sixteenth judicial district, is not to take effect until January 1, 1912, and that the new parish must therefore remain unassigned and without a court until that time; and hence cannot be said to exist.
But here we have to deal with two constitutional amendments adopted at the same time — the one, general in character, in that it deals with all the parishes in the state, and concludes with the proviso that it shall take effect from and after January 1, 1912; the other, a special enactment, dealing exclusively with the parish of Evangeline, providing that said parish shall be permanently organized on January 1, 1911, and that it “shall form part of, and be included in, the Sixteenth judicial district,” and “that the judge of said district shall hold regular terms of his court for the parish of Evangeline, at the parish seat, at such times as he may fix, according to law.”
And there can be no doubt, as it seems to us, construing the two amendments together, that the purpose was that the general redistricting should take effect on January 1, 1912, but that the parish of Evangeline *31 should become part of the Sixteenth judicial district on January 1, 1911.
Another contention is that Act No. 15 of 1910 provides that of the four members of the lower house representing the parish of St. Landry one shall represent the parish of Evangeline, but that, under article 18 of the Constitution, the representation of the parish of St. Landry cannot be changed until after the next apportionment, and that no xegal method is provided whereby the place of any particular representative from St. Landry is to be vacated in order to make room for the representative from Evangeline. The contention ignores the fact that Act 75 of 1910 specifically amends article 18 of the Constitution, so as to make that article read, in part:
“That, if there is more than one representative in a parish from which the larger portion of the territory is taken for the purpose of creating a new parish, one of such representatives may be appointed to the new parish in the same act which creates the parish.”
Including the ratified and confirmed act, No. 15, as part of the amendment, we find that it provides that:
“One of the representatives, now allotted to the parish of St. Landry, shall henceforth be elected and be the representative of the parish of Evangeline; * * * the intention being that one representative shall be allotted to Evangeline parish and three to St. Landry parish, in any way in which that can be legally done.”
It is conceded that all four of the members representing St. Landry. reside in the territory embraced in the new parish and that one of them who resigned was thereupon elected to represent Evangeline, so that, whatever might have been the theoretical difficulty, the problem has been practically solved. If the four representatives had all resided in the territory left to St. Landry, and neither had resigned, a different case would have been presented, which, as the matter stands, we consider it unnecessary to decide.
It is said that the provision in the Act No. 15 of 1910 to the effect that proceedings shall be instituted in the Sixteenth judicial district court for the adjustment of the rights and obligations of the old parish and the new contravenes article 280 of the Constitution. We can only say that, if that were the case, article 280 would have to yield, as the other is the later and more specific enactment. But article 280 merely provides that a newly created parish shall be entitled to a just proportion of the obligations of the parish or parishes from which it has been taken, and does not undertake to say in what manner such proportion is to be determined.
The (ratified and confirmed) statute in question, on the other hand, specifically declares :
“That, as soon as the said parish of Evangeline .has been permanently organized, * * * it shall be the duty of the Police Jury to institute judicial proceedings, in the sixteenth judicial court for the parish of St. Landry, for the purpose of ascertaining and settling, in a just and equitable manner, the proportion of the obligations of St. Landry parish which should be assumed by the said parish of Evangeline, and for the purpose of ascertaining the proportion of the assets and property of St. Landry parish to which the said parish of Evangeline would be entitled; and, for the net amount as ascertained to be due by either parish to the other, the debtor parish shall make provision for payment by such means as shall be legal and appropriate.”
Whether, therefore, such an adjustment, if the question were left at large, should be regarded as a legislative, or a judicial, function, there is no doubt as to the course to be pursued, since the statute quoted, regarded as part of the fundamental law, is as binding upon the one department of government as the other, and, entirely within the power of the sovereign, people, to enact.
For the reasons thus given, it is ordered, adjudged, and decreed that the judgment appealed from he affirmed.