On the Merits.
SOMMERVILLE, J.
Plaintiffs, four in number, allege that they “are citizens, inhabitants, taxpayers, and qualified electors of the city of New Orleans”; that the city entered into contracts with several street railway companies, which companies have been merged into and consolidated under one head, known as the New Orleans Railway & Light Company; that it was stipulated in the contracts between the city and the several railroad companies that said companies would operate street railroads and furnish service for a fare not to exceed five cents for each passenger; that they are the patrons of the said street railway system, and that they are vitally interested as citizens and taxpayers in the material growth, welfare, and progress of the city; that the stipulation fixing the maximum car fare at five cents for each passenger transported was and is for the benefit of said city of New Orleans, its citizens, inhabitants, and people, and “especially petitioners”; that the city, by ordinance, has consented to a modification of the several contracts between it and the railway companies whereby a fare of six cents for each passenger transported is allowed to be charged by the companies, for a limited time, which modification has been accepted and acted upon by the said companies; that the modification of the contracts is unauthorized, illegal, and in violation of the contract obligations between the city, its citizens, inhabitants, people, and especially petitioners, and the railway companies, on various grounds set forth in the petition; that the fixing of the maximum street car fare of five cents for each passenger is for the benefit of all the people, citizens, and inhabitants of the city of New Orleans, including petitioners, and that the same cannot, in any event, be legally increased; • and plaintiffs asked that a preliminary injunction issue, restraining the city and the New Orleans Railway & Light Company from carrying out the modified contract just mentioned, and that the New Orleans Railway & Light Company be restrained from collecting six-cent fares from passengers on the street railroads; and that defendant company be permanently enjoined from making such charge.
A rule nisi was issued by the court, directing the defendants to show cause why a preliminary injunction should not issue as prayed for. Both defendants appeared and filed the following exception: “That the *193 plaintiffs, individually and collectively, are absolutely without interest or right of action to prosecute this suit and stand in judgment therein.”
The exception was overruled; and defendants, in written answers, filed reasons showing why a preliminary injunction should not issue, and the trial court refused to issue the injunction asked for.
[5] Plaintiffs appealed. The city answered the appeal, and asked that the judgment appealed from be set aside, and that its exception to plaintiffs’ petition be maintained, and that the suit be dismissed. The railway company did not answer the appeal, and the ruling on its exception is final as to it. That ruling will not be reviewed here.
Plaintiffs do not allege that they are parties to the contracts between the city and the several railway companies; and they are not. They do not implead the several railway companies as parties defendants in this cause; they simply implead the New Orleans Railway & Light Company as the representative of the subsidiary companies operating under their charters. They do not allege that the city and the various railway companies were without authority to enter into the several contracts between them; on the contrary, they sue to enforce one provision of those contracts. They do not allege that taxation on their property will be increased in any way by the action of the parties in modifying the contracts in the manner complained of. They do not allege that the public fisc will be impaired in any way; on the contrary, the gross receipts of the railways companies will presumably be increased by the raise in car fare, and the city’s proportion of such receipts will be larger because of such increase.
[6, 7] The contracts between the city and the several railways companies operating in the city were undoubtedly entered into for the benefit of the public, and the provisions of those several contracts were for the common good of all the people and for the general welfare and convenience of the city and the inhabitants thereof. The provisions therein contained were not made “specially for petitioners,” and no one provision was made specially for them or any other individuals, or class or set of people. The contracts are with and for the city. They do not contain stipulations pour autrui. State ex rel. City v. R. R. Co., 37 La. Ann. 589; Loeber v. R. R. Co., 41 La. Ann. 1151, 5 South. 60; Oliff v. City of Shreveport, 52 La. Ann. 1203, 27 South. 688.
The Code Prac. art. 15, says that “an action can only be brought by one having a real and actual interest, which he pursues, but as soon as that interest arises he may bring his action.”
Plaintiffs are not parties to the contracts, and they have no real and actual interest in enforcing any one of the provisions thereof, and they have no vested rights therein.
The modification of one of the clauses of the contracts, with the consent of the parties thereto, does not in any way increase the burden of taxation upon plaintiffs’ property.
It is apparently for the public good. It is a war measure; the modification it is agreed, shall exist for a limited time; and, as declared in the ordinance attached to the petition, the contracts were modified because of the exigencies of the prevailing war and at the suggestion of national authorities, so as to avoid receiverships for and possible destruction of public utility corporations throughout the United States on account of the existing war. The increase in car fares was agreed upon to continue for a limited time so as to provide sufficient revenue to meet the increased cost of operation due to the enhanced price of labor, materials, and the imposition of taxes to help meet the cost of our war with Germany.
Plaintiffs do not point to any provision of *195 the city charter which the city has violated, except in putting the modification into effect before the expiration of 10 days after the adoption of the ordinance. Such putting into effect in less than 10 days is permitted under section 35 of the city charter. Act 159, 1912, p. 253. Besides, 10 days have now passed since the ordinance was adopted. Plaintiffs’ property rights were not affected by such action if it was irregular.
This case is not like the Handy Case, 39 La. Ann. 107, 1 South. 593, where certain taxpayers obtained an injunction to prevent the city from awarding a wharf lease where it was alleged that the award was to be made in direct violation of the law directing how such awards should be made by the city; that the city would be acting in bad faith in awarding the lease to a certain contractor ; that the proposed wharf rates fixed in the ordinance would be an increased burden upon commerce; that plaintiffs were prepared to bid many thousand dollars more for the lease than the favored contractor would pay; and that the burden of taxation on their property would be materially increased by the failure of the city treasury to receive the excess amount which they were willing to pay for the lease.
In commenting upon the Handy Case it is said in Morris v. Mu. Gas Co., 121 La. 1016, 46 South. 1001:
“The case of Handy et al. v. City, 39 La. Ann. 107, 1 South. 593, and others of like import, cited by plaintiff, do not support his contention that a taxpayer can contest the validity of a municipal ordinance for any cause. The doctrine of those cases is that property holders or taxable inhabitants have the right to resort to judicial authority to restrain municipal corporations, and their officers from transcending their lawful powers, or violating their legal duties in any unauthorized mode which will increase the burden of taxation, or otherwise injuriously affect taxpayers or their property; such as unwarranted appropriation and squandering of corporate funds, and unjustifiable disposition of corporate property, and illegal levying and collecting of taxes not due or exigible, etc. * * * Appellants’ interest as property owners to contest the ordinance will only accrue if damage to property rights become actual and real. O. P. art. 15.”
Plaintiffs having failed to allege any vested right or interest in the ordinances and contracts involved in this ease, and having failed to allege that the ordinance of the city was unreasonable and partial to the railway companies, or that the commission council acted in bad faith, or that their taxes would be increased by the adoption of the ordinance, or that the public fisc would be diminished thereby, and, not having referred to any law which forbade the state or city to modify a-contract with the consent of the other contractor, they are without interest or right of action to prosecute this suit and stand in judgment herein and their suit against the city of New Orleans will be dismissed.-
As the defendant railway company did not answer the appeal and ask for a reversal of the ruling on the exception filed by it to the right of plaintiffs to prosecute this suit and to stand in judgment herein, it is bound by that ruling; and the action of the trial court in refusing, in its discretion, to issue a preliminary injunction on the petition of the plaintiffs will be considered.
On the trial of the rule nisi evidence was offered and received, and the case was virtually tried on its merits. The reasons of the court for refusing to issue a preliminary injunction would be the same for denying the injunction after trial on the merits.
[8] In considering the petition for a preliminary injunction, we find that plaintiffs allege that the action of the city violates article 59 of the Constitution; but the ordinance attached to the petition does not release or extinguish, in whole or in part, an indebtedness, liability, or obligation of the defendant corporation to the municipality. On the contrary, it assumes to have the effect of increasing the amounts to become due the city *197 under the contracts with the railway companies by increasing the revenues of defendant, of which the city gets a given per cent.
[9] The burden of plaintiffs’ complaint is that the raise in car fares—
“impairs the obligation of the contract between the said city of New Orleans, its citizens, inhabitants, and people, and especially petitioners, on the one part, and the said New Orleans Railway & Light Company and underlying companies on the other part, which is a contravention of article 166 of the Constitution of the state of Louisiana, and of section 10, art. 1, of the Constitution of the United States.”
The only contracts referred to in the petition are those entered into between the city and various railways companies to which plaintiffs were not parties, and which were made under express legislative authority, and under the police power of the state and city; and contracts granting privileges are always within and under the' control of the state to change, modify, or revoke. These contracts are essentially not made with individual citizens.
[10] Section 12 of the city charter (page 266, Acts of 1912) empowers the commission council “to authorize the use of the streets for railroads operated by horse, electricity, steam or motive power, and to regulate the same.” Section 28 empowers the commission council to grant privileges for 'the use of streets “for such periods of time as the commission council may determine. The commission council shall have power and authority to revoke all existing privileges, such as are referred to in this section, which may be revocable.” The power to revoke certainly carries with it the right to modify a privilege granted by the city, particularly with the consent of the other party. Section 29 provides in part: “No right to construct and operate any street railway shall be sold except to the person, corporation, firm, or association offering the highest percentage of gross annual receipts to be derived therefrom during the term thereof, and said percentage shall be estimated on -the gross annual income derived from the said franchise,” etc.
[11] If this power to contract, given to the city for the general welfare and convenience of the city and its citizens, should be held to be insufficient to authorize the city to modify the contract granting privileges by the city, with the consent of the other parties to those contracts, then the Legislature has given such right specially in section 1 of the charter of the city (Act 159, 1912) which says: “The city, shall also have all powers, privileges, and functions which, by or pursuant to the Constitution of this state, have been, or could be, granted to or exercised by any city.”
It thiis appears that the city of New Orleans, under its police power, was authorized to make the contracts involved, and to modify them, and particularly with the consent of the railway companies, and no part of this police power could be contracted away for the benefit of plaintiffs or any one else.
[12] If plaintiffs had alleged that the increase in car fare consented to and fixed by the city temporarily was unreasonable and done in bad faith, and therefore in excess of the powers of the city to adopt the ordinance, the contradiction thereof would, have been found in the ordinance attached to the petition. That point was disposed of by the New Jersey Court of Errors and Appeals in the following language:
“The concise question presented is: Has the board of public utility commissioners, a state agent, the power to increase the rate to be charged for transportation service in order to produce a sufficient additional income to meet increased expense of operation growing out of the great advance in the cost of labor and material, principally due to conditions incident to our war with Germany; and, if so, was such power lawfully exercised? Assuming that the rate of five cents existing prior to the new conditions was a reasonable one, then the application of ordinary common sense will unhesitatingly lead every fair-minded person to the con *199 elusion that it would not continue to remain reasonable if the cost of production so advances as to destroy the basis upon which it was rested. The solution of such a proposition does not require the aid of legal learning; it is a question of economics, which any one of ordinary intelligence can apply.” O’Brien v. Public Utilities and City of Trenton v. Board, decided November term, 1918 (N. J.) 106 Atl. 414.
And the Supreme Court of the United States, in a recent opinion, reviewed the law on the subject of contracts between public service corporations and private individuals, where higher rates were established by the state railroad commission than those contracted for by the parties to a contract, and they said in part:
“Except for the seriousness with which this claim has been asserted and is now pursued into this court, the law with respect to it would be regarded as so settled as not to merit further discussion.
“That private contract rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict, has been often decided by this court. Thus in Manigault v. Springs, 199 U. S. 478, 480, 26 Sup. Ct. 127, 130, 50 L. Ed. 274, it was declared that:
“ ‘It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from properly exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be < fleeted.’
“This on authority of many cases ■ jvhich are cited.
“In Hudson County Water Co. v. McCarter, 209 U. S. 349, 357, 28 Sup. Ct. 529, 531, 52 L. Ed. 828, 14 Ann. Cas. 560, it is said that:
“ ‘One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject-matter.’
“In Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467, 482, 31 Sup. Ct. 265, 270, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671, this is quoted with approval from Knox v. Lee, 12 Wall. 457, 550, 551, 20 L. Ed. 287, viz.:
“ ‘Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and' no obligation of a contract can extend to defeat the legitimate government authority.’
“In the same report, in Chicago, Burlington & Quincy R. R. Co. v. McGuire, 219 U. S. 549, at page 567, 31 Sup. Ct. 259, 262, 55 L. Ed. 328, it is said:
“ ‘There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interest of the community.’
“In Atlantic Coast Line R. R. Co. v. Goldsboro, 232 U. S. 548, 558, 34 Sup. Ct. 364, 368, 58 L. Ed. 721, the court said:
“ ‘It is settled that neither the “contract” clause nor the “due process” clause has the effect of oven-iding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise.’
“And in Rail & River Coal Co. v. Ohio Industrial Commission, 236 U. S. 338, 349, 35 Sup. Ct. 359, 362, 59 L. Ed. 607, the state of the law upon the subject is thus aptly described:
“ ‘This court has so often affirmed the right of the state, in the exercise of its police power, to place reasonable restraints, like that here involved, upon the freedom of contract, that we need only refer to some of the cases in passing.’
“These decisions, a few from many to like effect, should suffice to satisfy the most skeptical or belated investigator that the right of private contract must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the state, and the judgment of the Supreme Court of Georgia must be affirmed.” Union Drygoods Co. v. Georgia Pub. Service" Corporation, 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed as to the New Orleans Railway & Light Company, and that it be annulled, avoided, and reversed as to the city, and that there now be judgment in favor of the city of New Orleans against plaintiffs, dismissing this suit at plaintiffs’ cost in both courts.
*201 O’NIELL, J.,
being of tbe opinion that tbe judgment appealed from should be affirmed as to both defendants, concurs only in the decree affirming the judgment in favor of the New Orleans Railway & Light Company; his opinion being that plaintiffs had a right of action against the railway* and light company, and that, if the city of New Orleans was not a necessary party defendant in the action, it would suffice for the court to say so.
MONROE, C. J., not having heard the argument takes no part.