166 So. 94

**STATE ex rel. GARLAND v. GUILLORY.**

No. 33722.

Dec. 13, 1935.

Dissenting Opinions Dec. 21, 1935, and Jan. 3, 1936.

Rehearing Denied Jan. 6, 1936.

John W. Lewis, L. L. Perrault, and Dubuisson & Dubuisson, all of Opelousas, for appellant.

George M. Wallace, of Baton Rouge, L. Austin Fontenot, of Opelousas, Isom J. Guillory, of Eunice, and Roland B. Reed, George L. Fontenot, and O. E. Guillory, all of Ville Platte, for appellee.

LAND, Justice.

Under article 7, § 31, of the Constitution of 1921, the old Thirteenth judicial district was composed of the parishes of St. Landry and Evangeline, and the old Fifteenth judicial district was composed of the parishes of Acadia, Lafayette, and Vermilion.

Hon. B. H. Pavy and Hon. R. Lee Garland were respectively the duly elected judge and district attorney of the old Thirteenth judicial district, when Act No. 3 of the Fourth Extra Session of the Legislature of 1935, rearranging the old Thirteenth and the old Fifteenth judicial districts went into effect October 1, 1935.

In section 1 of this act, it is provided that "The Parish of Evangeline shall compose the Thirteenth District, and shall have one judge.

"The Parishes of Acadia, Lafayette, St. Landry and Vermilion shall compose the Fifteenth District, and shall have three judges *until the expiration of the terms* of the present judges of the district *and the term of the judge transferred to the Fifteenth District,* and thereafter the Fifteenth District shall have two judges."

Hon. B. H. Pavy was the judge transferred from the old Thirteenth judicial district to the rearranged or new Fifteenth judicial district, composed of the parishes of Acadia, Lafayette, St. Landry, and Vermilion.

In section 2 of the act, it is provided "That all causes pending in the Thirteenth Judicial District Court for the Parish of St. Landry at the time this re-arrangement takes effect be 'and they are hereby transferred to the Fifteenth Judicial District Court for the Parish of St. Landry."

In section 3 of the act it is provided that "The Governor shall appoint a Judge and a District Attorney for the re-arranged Thirteenth District, to serve until their successors are elected. The judges and district attorneys of the re-arranged Thirteenth and Fifteenth Districts shall be elected at the congressional election on the first Tuesday next following the first Monday in November, 1936, and every six years thereafter. The District Attorney of the present Thirteenth District shall be appointed as an additional assistant District Attorney of the Fifteenth District, to serve until December 31, 1936"; the compensation for his services is fixed in this section of the act; and it is provided that no successor shall be appointed.

The act became effective on October 1, 1935, and on October 3d, the Governor appointed Hon. J. Cleveland Fruge as judge, and Hon. E. Herman Guillory as district attorney for the rearranged or new Thirteenth judicial district, ·composed of the parish of Evangeline. Both were duly commissioned and entered upon the discharge of the duties of his office.

Relator, Hon. R. Lee Garland, district attorney of the old Thirteenth judicial district, on October 5, 1935, filed suit against the new district attorney, under the intru-

sion-into-office act, section 2593 of the Revised Statutes, as amended by Act No. 102 of 1928 and attacked the constitutionality of Act 3 of the Fourth Extra Session of 1935 upon various grounds.

Defendant filed an exception of no cause or right of action, which clearly presented in the lower court the question of the constitutionality of the act.

The district judge held that sections 1 and 2 of the act, in so far as they rearrange the judicial districts, are constitutional, and maintained the exception of no cause or right of action, for the reason that relator was no longer a resident of the Thirteenth judicial district, as rearranged, and had no interest in the office of district attorney in that district.

The district judge, however, held that section 3 of the act was unconstitutional in so far as it provides for the appointment by the Governor of a judge and a district attorney in the rearranged Thirteenth district, instead of by election, as provided by sections 33 and 58 of article 7 of the Constitution.

He also held that that portion of section 1 of the act in so far as it seeks to increase the number of judges in the Fifteenth district is unconstitutional, as the act was not passed by a vote of two-thirds of the members of Legislature, elected as such, in pursuance of section 34 of article 7 of the Constitution.

He also held that that portion of section 3 of the act that provides for the appointment of relator as assistant district attorney in the Fifteenth district is unconstitu-

tional, as such appointment was in violation of section 60 of article 7 of the Constitution.

Relator, R. Lee Garland, has appealed from the judgment of the district court, and defendant has answered the appeal, and prays that the judgment appealed from be affirmed, in so far as it holds as constitutional sections 1 and 2 of the act, and that the judgment be reversed, set aside, or amended, in so far as it holds the provisions of the act unconstitutional.

Relator attacks the constitutionality of the act on five grounds:

(1) That it attempts *to remove* relator from the office to which he was elected, by a simple act of the Legislature, and without cause, in violation of article 9 of the Constitution, which provides the only method for the impeachment and removal of officers such as district attorneys.

Act No. 3 of the Fourth Extra Session of 1935 is enacted by the Legislature under the authority contained in section 34 of article 7 of the present Constitution, which provides that "The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district."

It is also provided in section 40 of article 7 of the Constitution that "No *judge* of any court of the State, except as otherwise provided in this Constitution, shall be affected in his term of office, salary, *or jurisdiction as to amount,* during the term or period for which he was elected or appointed; and any legislation so affecting *any judge* or court shall take effect *only at the end of the term of office of the judge or judges,* incumbents of the court, or courts, to which such legislation may apply at the time of its enactment."

In State v. Dowling, 167 La. 907, 120 So. 593, 597, it is said, with the present Chief Justice as the organ of the court, that "There is a provision in the Constitution, section 40 of article 7, which forbids the Legislature *to curtail* the term of office or salary of any *judge* in office, and declares that any legislation so affecting *a judicial office* shall have effect only at the end of the term of the incumbent in office at the time of the passage of the act. If the writers of the Constitution had intended to impose the same restriction *upon legislation affecting the terms of office or salaries of other officers,* they would not have confined the restriction *to legislation affecting the terms of office and salaries of judges.* In fact, no such restraint would have been imposed upon legislation *affecting the terms of office or salaries of judges,* if the restraint went without saying *as to public officers generally."* (Italics ours.)

In other words, under the present Constitution, a judge is the only public officer whose term of office or salary cannot *be curtailed or affected* by an act of the Legislature during the term or period for which he was elected, "except as otherwise provided in this Constitution," which means, of course, that a judge may also be removed from office, during his term, by impeachment, or by address out of office, or by suit to remove from office brought

in a court of competent jurisdiction, under article 9 of the present Constitution, relative to "Impeachment and Removal From Office."

■ But section 40 of article 7 of the Constitution contains no restriction upon legislation *curtailing* the term of office or affecting the salary of a district attorney, during his incumbency. His term of office or salary may, therefore, be *curtailed or affected* by a simple act of the Legislature during his incumbency, without the necessity of impeachment, or address out of office, or suit to remove, as such legislation is authorized by the present Constitution.

In enacting Act No. 3 of the Fourth Extra Session of 1935, rearranging the old Thirteenth and Fifteenth judicial districts of the state, the Legislature, without doubt, was aware of the decision in the Dowling Case and acted in due accord with it.

Under the provisions of this act, the old Thirteenth judicial district of the state *was dismembered and abolished,* by organizing the parish of Evangeline into a separate and new judicial district, known as the rearranged Thirteenth judicial district, and by incorporating the parish of St. Landry as one of the parishes of the rearranged or new Fifteenth judicial district. As the result of such rearrangement of the old Thirteenth and Fifteenth judicial districts, the term of the office of district attorney of relator was *curtailed, or shortened,* as the judicial district in which he held that office was *abolished.*

Section 59 of article 7 of the Constitution provides that a district attorney "shall be an actual resident of the district and a qualified elector of the same."

With the rearrangement of the districts, the relator, who alleges that he is a resident of St. Landry parish and a qualified elector of that parish, is no longer an actual resident of the Thirteenth judicial district, as rearranged, and therefore, in spite of the fact that he has served as district attorney in that parish, or in the district which included that parish, for approximately forty years, he now lacks the qualification of residence.

As the Constitution of the state, under section 34, specifically gives the Legislature the right to rearrange the judicial districts, and with no prohibition as to the time the rearrangement might be made, the Legislature was clearly acting within the authority granted by the Constitution, in enacting Act No. 3 of the Fourth Extra Session of 1935, providing for the rearrangement of the old Thirteenth and Fifteenth judicial districts in the state. If relator is no longer a resident of the Thirteenth district, as rearranged, he cannot serve as district attorney of that district, and, in effect, is legislated out of office. Const. 1921, § 13, art. 8.

At the time relator was elected and qualified as district attorney of the old Thirteenth judicial district, section 13 of article 8, as to his eligibility, was a part of the Constitution of this state, and relator accepted the office, subject to the provisions of that section of the Constitution, as well as subject to the provisions of section 34 of article 7, providing for the rear-

rangement by the Legislature of the judicial districts of the state.

▮ Numerous cases hold that *by abolition* of the district the incumbent loses his office. In re Petitioner, Hinkle (1884) 31 Kan. 712, 3 P. 531; In re Wood (1886) 34 Kan. 645, 9 P. 758; Aikman v. Edwards (1895) 55 Kan. 751, 42 P. 366, 30 L.R.A. 149; State ex rel. Robinson v. Lindsay (1899) 103 Tenn. 625, 53 S.W. 950; State ex rel. Harris v. Hamby (1904) 114 Tenn. 361, 84 S.W. 622.

In State v. Dowling, 167 La. 907, page 920, 120 So. 593, 597, it is said:

"In support of the argument that the Act 126 of 1928 violates Article 9 of the Constitution appellant cites four cases, namely, State ex rel. Holmes v. Wiltz, 11 La.Ann. 439, State ex rel. Downes v. Towne, 21 La.Ann. 490, State v. Bain, 137 La. 308, 68 So. 621, and State v. Dunson, 138 La. 131, 70 So. 61; but we do not find the rulings in these cases appropriate to the question presented here. In State ex rel. Holmes v. Wiltz, it is true, the court said that a person holding an existing office, under a fixed tenure, could not be removed, or his regular term of service abridged, by an ordinary act of legislation other than an act *abolishing* the office. But the only question which the court had in mind, or was called upon to decide, or did decide, was whether an act of the Legislature, entitled 'Act creating a recorder of mortgagors for the Parish of Orleans,' approved March 14, 1855, p. 321, had repealed the original act creating the same office, approved March 20, 1813, p. 136.

The court ruled that the act of 1813 was not repealed by the act of 1855 and therefore that the office was not thereby made *vacant*. The important point in the case cited was that, in that case, the new statute on the subject did not purport to *shorten* the term of office, as the court observed, on page 442 of the report, viz: 'The same term and the same mode of appointment have been redeclared in the Act of March 14, 1855, and still no change is made in the office itself or its duties.' In the case of State ex rel. Downes v. Towne, the ruling was that an officer whose term of office was 'fixed in the Constitution' could not be legislated out of office. We quote from page 492 of the report (the italics being ours), viz: 'It was not in the power of the Legislature to legislate him out of office or to diminish or increase his term of office *as fixed in the Constitution.*' In State v. Bain and in State v. Dunson, the ruling was that, in so far as a statute which declared a certain act on the part of a public official to be a misdemeanor declared also that a conviction for the offense should operate as a removal from office, the statute was unconstitutional, because the Constitution prescribed a *civil process* for removal from office, and impliedly forbade any other process. The Act 126 of 1928 does not provide a proceeding for removal from office, and is not violative of article 9 of the Constitution."

Nor does Act No. 3 of the Fourth Extra Session of 1935 provide a proceeding for removal from office, by impeachment, suit, address, or otherwise, in accordance with the provisions of article 9 of the present

Constitution. This identical question was settled in the case of State v. Dowling, 167 La. 907, 120 So. 593, in which it was held that the provision of Act 126 of 1928, *shortening* the term of the office of president of the state board of health, did not constitute a removal of such officer by a method other than that prescribed by article 9 of the Constitution so as to render the statute unconstitutional.

It is true that the case of State ex rel. Downes v. Towne, 21 La.Ann. 490, cited in the Dowling Case, holds that where the term of a public officer is *"fixed in the constitution,"* he cannot be legislated out of office, or his term of office diminished or increased.

That case, however, was decided in the year 1869 under the provisions of the Constitution of 1868. Article 83 of that Constitution provides that "The general assembly shall divide the State into judicial districts, which shall remain *unchanged* for four years, and for each district court one judge, learned in the law, shall be elected for each district by a plurality of the qualified electors thereof," etc.

Article 84 of the same Constitution also provides that "Each of said judges shall receive a *salary* to be fixed by law, which shall not be increased or diminished during his term of office. * * * The judges of the district courts shall hold their office *for the term of four years."*

The Constitution of 1868 does not contain any provision that "The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district," as contained in section 34 of article 7 of the present Constitution; nor does the Constitution of 1868 provide that "No *judge* of any court of the State, except as otherwise provided in this Constitution, shall be affected in his term of office, salary, or jurisdiction as to amount, during the term or period for which he was elected or appointed," as provided in section 40 of article 7 of the present Constitution.

As this latter provision was construed in State v. Dowling as prohibiting, during the term of office, the *curtailing* of the term of a *judge,* but not of any other public officer, the case of State ex rel. Downes v. Towne, cited in the Dowling Case, ceases to be of any value as a precedent or authority, because of the difference in the provisions of the Constitution of 1868 and the present Constitution of 1921.

▋ The logic of the construction placed upon section 40 of article 7 in the Dowling Case is unanswerable. If the framers of the Constitution had intended to protect the term and salary of a district attorney, during his incumbency, against curtailment, in the rearrangement by the Legislature of the judicial districts of the state, undoubtedly, the district attorney, as well as the judge, would have been included in that section and article of the present Constitution. The omission of that officer, from that section and article, can lead to but one reasonable and sound conclusion, and that is, that such was not the intention of the framers of the present organic law of the state.

This attack upon the constitutionality of the act is without merit.

(2) That the act is unconstitutional because, by a simple act of the Legislature, it attempts to add a new district judge and a new district attorney for the proposed new Thirteenth judicial district composed of the parish of Evangeline alone, effective at once, and by appointment of the Governor instead of by election, which violates sections 33 and 58 of article 7 of the Constitution.

Section 33 of article 7 of the Constitution provides that "District judges shall be elected by a plurality of the qualified voters of their respective districts, in which they shall have been actual residents for two years next preceding their election. They shall be learned in the law, and shall have practiced law in this State five years previous to their election. District judges under this Constitution shall be elected on the Tuesday after the First Monday in November, 1924, and every six years thereafter."

Section 34 of article 7 of the Constitution, however, provides that "The Legislature may rearrange the judicial districts, and *by a two-thirds vote* of the membership of each house, *may increase or decrease the number of judges* in any district."

The Legislature cannot *increase the number of judges* in any district, without *creating* new judges; and it is specifically provided in section 11 of article 5 of the Constitution "that the Legislature may provide *the mode* of filling *all offices created by it."*

The Legislature, under section 34 of article 7 of the Constitution, in rearranging judicial districts, may likewise *decrease* the number of judges, which necessarily includes the authority in the Legislature to *remove* judges which may not be deemed necessary.

It thus appears that section 34 of article 7 of the Constitution is a special provision or law pertaining solely to the rearrangement of judicial districts in the future' and the increase or decrease of the number of judges, in effecting such rearrangement, as the public interests may require.

On the other hand, section 33 of article 7 relative to the election of judges is a general provision or law, applicable to judges created at the time of the adoption of the Constitution in the year 1921.

The framers of the Constitution in that year provided for twenty-six judicial districts and for the number of judges then deemed necessary, and for the election of such judges. These are all general provisions or laws, intended to meet the need for judges at the date of the adoption of the Constitution in 1921.

The growth of the state in the future, the increase of its population and business, a possible increase of litigation might render it desirable, and it might become important to the public interests that the number of judges should be increased. On the other hand, the changing condition of a retrograding state in the amount of

population, or even a decrease of litigation, might require a decrease in the number of courts. Such was the reason upon which section 34 of article 7 rests, and the purposes which the framers of the Constitution intended it should accomplish. The ever changing state of human affairs imposes upon the Legislature the duty of adopting its legislation to the various phases which the condition of the country and the wants of the community may from time to time assume.

Section 34 of article 7 of the Constitution, as well as section 11 of article 5 of the Constitution, are express and special provisions or laws.

Section 34 of article 7 of the Constitution specifically confers upon the Legislature the constitutional authority to *"increase"* or *create* new judges, in the rearrangement of judicial districts of the state; and section 11 of article 5 of the Constitution specifically confers upon the Legislature the constitutional authority to "provide *the mode* of filling all offices *created* by it."

It follows, necessarily, that the Legislature had full constitutional authority to provide that the new judge created by it in the new Thirteenth district should be appointed by the Governor.

Section 33 of article 7 of the Constitution providing for the election of judges is a general provision or law and cannot apply to the present case, without making a dead letter of section 34 of article 7 and of section 11 of article 5 of the Constitution, express and special provisions or laws.

Article 9 of the Constitution, relative to the "Impeachment and Removal From Office" is likewise a general provision or law, and is in conflict or inconsistent with the constitutional authority granted by section 34 of article 7 to the Legislature to "decrease," or remove judges, in the rearrangement of the judicial districts of the state.

The identical issues involved in this case arose in the case of State ex rel. T. Wharton Collens v. Charles Clinton, Auditor, 26 La.Ann. 406, 408. There were six district courts in the parish of Orleans when the Constitution of 1868 went into effect. Relator was elected judge of the Seventh district court of New Orleans on November 4, 1872, and continued to discharge the duties of the office until the going into effect of an act of Legislature passed on December 14, 1872, Act No. 2 of Acts 1872, Ex.Sess., p. 38, abolishing the Seventh district court of New Orleans. The relator specifically charged that the act of the Legislature was unconstitutional, void, and without effect, because it violated certain general provisions of the Constitution of 1868, which provided in article 83 that the General Assembly may establish in the parish of Orleans as many district courts as the public interest may require, and until otherwise provided, there shall be seven district courts for the parish of Orleans.

It is said in part in State ex rel. T. Wharton Collens v. Charles Clinton, Auditor: "Article 83 announces that the General Assembly may establish as many district courts as the public interests may re-

quire. * * * If it should decide that the public interests require more than seven district courts in New Orleans it may establish more. If it should decide that the public interests require a smaller number of district courts than seven, it has equally the right to establish a smaller number. * * *

"We are told that this article of the constitution must be considered and interpreted in connection with the other articles of the constitution on the same subject matter, the articles 81, 84, 97, 110, 122 and 158. Granted. But let us not overlook an important feature that is presented in this discussion, and that is, that article 83, so far as it relates to the organization of the district courts of New Orleans, is express and special. It is a well recognized rule that general legislation does not control special legislation on the same subject matter. All those articles that treat of district courts, tenure of office, removal of judges, etc., as a general subject must be subordinated to article 83, so far as their provisions are in conflict or inconsistent with the special provisions of article 83 in relation to the district courts of New Orleans. By this rule we harmonize and give effect to each and every one of the articles we have just enumerated, instead of becoming bewildered in a labyrinth of difficulties, vainly endeavoring to limit and circumscribe the special provisions of article 83, by giving a controlling power over them to the general provisions of the other articles."

To interpret the Constitution of 1921 otherwise, would strike out and eliminate from it every special provision therein contained, because of conflict or inconsistency with general provisions on the same subject-matter.

■ The Legislature having the specific constitutional authority conferred upon it by section 34 of article 7 of the Constitution to "increase," or *create* new judges, in the rearrangement of the old Thirteenth and Fifteenth judicial districts, necessarily had plenary power *to create* a new judge for the rearranged Thirteenth judicial district, as well as a new judge for the rearranged Fifteenth judicial district, and to require that these judges be appointed by the Governor under the authority of section 11 of article 5, conferring upon the Legislature the constitutional right to "provide the *mode* of filling all offices *created* by it."

This attack upon the act is without merit.

(3) That the act creates an additional assistant district attorney for the Fifteenth judicial district as rearranged by the act, and names the assistant, in violation of section 60 of article 7 of the Constitution.

We will discuss this attack upon the constitutionality of Act No. 3 of the Fourth Extra Session of 1935, after disposing of the two additional grounds of unconstitutionality raised by amended and supplemental petition, which are as follows: (1) 4th. Because it deprives relator of the office of district attorney, to which he was elected; and of emoluments of said office, *without due process of law*, in violation of the Fourteenth Amendment to the Constitution of the United States, and of section

2, article 1 of the Constitution of this state; and, (2) 5th. Because the act was not passed by a vote of two-thirds of the membership of the Legislature, elected as such, and in pursuance of sections 8 and 9 of article 3 of the Constitution of this state.

As to the attack upon the constitutionality of the Act (1) 4th, as to deprivation of office and emoluments, being in contravention of the Fourteenth Amendment to the Federal Constitution and also in violation of section 2, article 1 of the State Constitution, it has been repeatedly held by the Supreme Court of the United States and by various state courts that the nature of the relation of a public officer to the public is inconsistent with either a property or contract right. Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 1009, 44 L.Ed. 1187; Crenshaw v. United States, 134 U.S. 99, 104, 10 S.Ct. 431, 33 L.Ed. 825, 827; Newton v. Mahoning County, 100 U.S. 548, 559, 25 L.Ed. 710; Smith v. Mayor, etc., of New York, 37 N.Y. 518, 520; State ex rel. Attorney Gen. v. Hawkins, 44 Ohio St. 98, 5 N.E. 228; 22 R.C.L., § 12, p. 44, "Property" 22 R.C.L., § 9, p. 377, "Public Officers" 46 C.J. 932, § 28, "Constitutional Provisions."

There is no merit in this attack upon the constitutionality of the act.

(2) 5th. "Because it was not passed by a vote of two-thirds of the membership of the Legislature of Louisiana, elected as such in pursuance of sections 8 and 9 of article 3 of the Constitution of this State."

"An exception of no cause of action admits the well pleaded facts, but not the conclusions of law contained in the petition."

Such have been the uniform decisions of this court from the year 1853 down to the present time. Parish v. Municipality. No. 2 (1853) 8 La.Ann. 145; State v. Hackley, Hume & Joyce (1909) 124 La. 854, 50 So. 772; First Natchez Bank v. Malarcher-Damare Co. (1914) 135 La. 295, 65 So. 270; Kirkpatrick v. Monroe (1925) 157 La. 645, 102 So. 822; Mahoney v. Perkins (1928) 166 La. 730, 117 So. 810; and other cases.

The question as to whether the Constitution requires a certain vote for the passage of an act is not a question of *fact* at all, but is purely a question of *law,* and erroneous conclusions of law are not admitted by an exception of no cause or right of action, and may be questioned by a defendant pleading such exception.

Section 34 of article 7 of the Constitution of 1921 provides that "The Legislature may rearrange the judicial districts, and by a two-thirds vote *of the membership of each house,* may increase or decrease the number of judges in any district." (Italics ours.)

In Warnock v. City of Lafayette, 4 La. Ann. 419, it was held that "The power of removing certain municipal officers for negligence or malfeasance, and of declaring their offices vacant and ordering a new election, conferred upon the City Council of Lafayette by sec. 11 of the stat. of

29 April, 1846, to be exercised 'by a vote of two thirds of that body,' must be construed as meaning two thirds of that body as legally constituted by the presence of a quorum, and not two thirds of the whole number of members composing the council."

The council in that case was composed of ten members, nine of whom were present, and the votes of six members were held to be sufficient. The 16th section of the act provides that the mayor, or in his absence or inability to act, the president, and a majority of the members elect of said council, shall form a quorum to do business.

The authorities on the question are reviewed at length by the late Wm. A. Taft, then Solicitor General of the United States, in excerpts from his brief in 36 L.Ed. 322, where he cites the Warnock Case, as supporting his contention *that two-thirds of each house* means two-thirds of a quorum.

To illustrate: The Louisiana House of Representatives consists of one hundred members; a majority of fifty-one members forms a quorum to transact business; and a bill, in order to pass, must be voted for by a majority of the members elected to each House. Const. 1921, art. 3, §§ 5, 19, 24.

The Louisiana Senate consists of thirty-nine senators. Const. 1921, art. 3, sec. 4, a quorum consisting of twenty members.

Applying the rule in the Warnock Case, a vote of fifty-two members, or two-thirds of seventy-eight members present and vot-

ing, would constitute a two-thirds vote of *"the membership of the House";* and a vote of twenty-two members, or two-thirds of thirty-three members present and voting, would constitute a two-thirds vote of *"the membership of the Senate,"* while a vote of two-thirds of the members *elected* to the House would require sixty-seven votes; and a vote of two-thirds of the members *elected* to the Senate would require twenty-six votes.

It is clear, therefore, that a "two-thirds vote of the membership of each house," as required by section 34 of article 7 of the Constitution, means two-thirds of a quorum of each House.

If the framers of the Constitution of 1921 had intended that acts passed in pursuance of section 34 of article 7 of that instrument should receive sixty-seven votes in the House and twenty-six votes in the Senate, they would have, undoubtedly, required a two-thirds vote of the members *elected* to each House, as is done in the case of amendments to the Constitution (art. 21); in the case of the passage of a bill on reconsideration after the Governor has vetoed it (section 15, art. 5); in the case of creation of new institutions (section 14, art. 4); in the case of impeachment of public officers (section 2, art. 9); and in case of address out of office (section 3, art. 9).

It therefore appears that in all cases where the Constitution requires the votes of two-thirds of the members *elected* to each House, the fundamental law has left the matter free of doubt, by declaring, in no uncertain terms, that the votes of two-

thirds of the members *elected* to each House are required.

In United States v. Ballin, 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321, an Act of Congress was sustained as having received the votes of a majority of the members of Congress, when it received a majority of the votes of the quorum present.

The rule is thus stated in Cooley's Constitutional Limitations, vol. 1, p. 291: "For the vote required in the passage of any particular law the reader is referred to the Constitution of his state. A simple majority of a quorum is sufficient, unless the Constitution establishes some other rule; and where, by the Constitution, a two-thirds or three-fourths vote is made essential to the passage of any particular class of bills, two-thirds or three-fourths vote of a quorum will be understood, unless the terms employed clearly indicate that this proportion of all the members, or of all those elected, is intended. Southworth v. Palmyra & Jackson R. Co., 2 Mich. 287; State v. McBride, 4 Mo. 303, 29 Am.Dec. 636; Rushville Gas Co. v. Rushville, 121 Ind. 206, 23 N.E. 72, 6 L.R. A. 315, 16 Am.St.Rep. 388; State v. Missouri, etc., R. Co., 96 Kan. 609, 152 P. 777, Ann.Cas. 1917A, 612; Osburn v. Staley, 5 W.Va. 85, 13 Am.Rep. 640."

▇▇▇▇The allegation is that the bill was not passed by a vote of two-thirds of the membership of the Legislature, *elected* as such, and in pursuance of sections 8 and 9 of article 3 of the Constitution of this state. This plainly is not an allegation of *fact* that the bill was not passed by a vote of two-thirds of "*the membership of each*

*house*," as required by section 34 of article 7 of the Constitution, but is purely an allegation that the bill was not passed by the votes of two-thirds of the members *elected* to each House of the Legislature.

▇▇▇▇The evident purpose of the framers of the Constitution in requiring, in section 34 of article 7, that bills be passed by "a two-thirds vote of the membership of each house," or a quorum, was to facilitate legislation to protect the public interests, in rearranging the judicial districts of the state, and in increasing or decreasing the number of judges, which could not be accomplished as readily, if a two-thirds vote of the members *elected* to each House was required.

It is apparent that such legislation is of a character to provoke strong opposition from interested persons, adversely affected, and their friends, and might be delayed, jeopardized, and even defeated, if a two-thirds vote of all the members *elected* to each House should be required for the passage of a bill.

▇▇▇▇There is no merit in this attack upon the constitutionality of the act.

▇▇▇▇In our opinion Act 3 of the Fourth Extra Session of 1935 is constitutional, with the single exception that it is provided in section 3 of the act that "The District Attorney of the present Thirteenth District shall be appointed as an additional assistant District Attorney of the Fifteenth District, to serve until December 31, 1936," etc.

It is provided by section 60 of article 7 of the Constitution that "In each judicial

district, the Legislature shall have the power to create and provide one or more assistant district attorneys, said assistant district attorney to be *selected and appointed by the district attorney* of said judicial district, subject to removal *at his discretion,* and commissioned by the Governor." (Italics ours.)

It is true that it is the duty of the Governor to commission an assistant district attorney, but the selection and appointment of such assistant must first be made by the district attorney of the district.

If section 3 of the act had merely provided for an assistant district attorney to be appointed in the present Thirteenth district, leaving his selection and appointment to the district attorney of that district, it would have been constitutional as to such provision.

However, "Nothing is better settled than that the unconstitutionality of part of a statute does not necessarily invalidate the whole. The same statute * * * may contain unconstitutional provisions, and may contain other salutary and useful provisions not obnoxious to any constitutional exception." Moore v. New Orleans, 32 La.Ann. 726; Parish of St. Landry ex rel. Fontenot v. Stout, 32 La.Ann. 1278, 1279; State ex rel. Woodward v. Chapman, 35 La.Ann. 75, 76; Watson v. McGrath, 111 La. 1097, 1098, 36 So. 204; State ex rel. v. Isaacson, 32 La.Ann. 1306.

As the appointment of relator as assistant district attorney is the last clause in section 3 of the act, and does not affect in any way the remaining provisions in that section, this provision may be stricken out, without affecting the constitutionality of the act, and the remaining provisions must be given full force and effect.

It is to be observed that the act has sedulously protected the terms, salaries, and jurisdiction as to amount of "the present judges of the district and the term of the judge transferred to the Fifteenth District," the Honorable B. H. Pavy, during their respective incumbencies, as required by section 40 of article 7 of the present Constitution.

Section 58 of article 7 of the Constitution, under which relator was elected, providing that a district attorney shall be elected in the judicial district at the same time and for the same term as provided herein for district judges, is a general provision of the Constitution, and must yield to the special provision, section 34 of article 7, conferring authority upon the Legislature to rearrange the judicial districts of the state. State ex rel. T. Wharton Collens v. Charles Clinton, Auditor, 26 La. Ann. 406.

In that case, it is said in part: "The relator in this case, it appears, was *elected* to the office of district judge of the Seventh District Court of New Orleans *at the general election* in November, 1872. The State Constitution of 1868, containing the provisions in regard to the district courts of New Orleans which we have had under review, was then, as it is now, the paramount law of Louisiana. The abolishment of the court over which he presided was

a legislative act, which the General Assembly of Louisiana had the constitutional power and right to perform. That act was not an ex post facto law. There was no contract or obligation violated by it. It was simply the exercise of a power and discretion with which the General Assembly was clothed before and at the time the relator came into office. Subject to the exercise of this power he sought and obtained the office which he filled. He has no just ground therefore to set up a violation of his constitutional rights. When the law was enacted which dispensed with the Seventh District Court of New Orleans, he ceased to be the judge of that court, *which, when the law abolishing it was promulgated, became a thing of the past.* He was no longer authorized to exercise the functions of a judge. He was no longer called upon to discharge the duties of a district judge. His claim for the salary which appertained to the office as long as it existed, is a just claim. His demand for salary after the office became extinct is not one that can be recognized. * * *

"In the present case the act of the Legislature of fourteenth December, 1872, operates adversely to the interests of an able and upright judge; but no exception can on that account be taken to the law itself. Private advantage and private interests must yield to public advantage and public interests. We must give laws their proper force how much soever in isolated cases their operation may be opposed to individual interests." (Italics ours.)

What is said in that case applies with equal force to the case before us.

The Legislature is clothed with plenary constitutional power to rearrange judicial districts. It may, in its discretion, abolish an existing district, as it has done in the present case. The judicial district is the district in which a district attorney is elected, and if that district is abolished by the Legislature, in the rearrangement of judicial districts, he is legislated out of office the moment the act takes effect, which was on October 1, 1935, in this case.

There is no provision in the Constitution protecting a district attorney against curtailment of his term, or reduction of his salary, during his incumbency.

The office of district attorney of the Thirteenth district as rearranged is a new office, which relator has never held, and is ineligible to hold, as he is not a resident of that district. Hence, relator is without right or interest to attack the constitutionality of the appointment of defendant as district attorney of the new district, and to proceed against him in this suit under section 2593 of the Revised Statutes, as amended by Act No. 102 of 1928, the intrusion into office act.

Mr. Justice Fenner, in speaking of the State Constitution as the paramount law, unless in conflict with the Federal Constitution, said in State ex rel. Folsom Bros. v. Mayor, etc., of City of New Orleans, 32 La.Ann. 709, 714, 715: "Its provisions may control, with plenary power,

all private and social rights, and all existing laws and institutions, and may even violate the most fundamental rules of justice; provided, only, they do not conflict with the provisions of the Constitution of the United States, which, with regard to the subjects covered by them, and to those subjects alone, form the paramount law of the land. No court has the right to question the validity of any provision of a State Constitution, however unwise, impolitic, or even unjust it may be, upon any other ground whatever than that it violates the Constitution of the United States.

"Cooley on Constitutional Limitations, p. 34."

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that Act 3 of the Fourth Extra Session of the Legislature of this state of the year 1935 be and is hereby declared legal, constitutional, and valid in all of its parts, except as to the following provision contained in section 3 of said act: "The District Attorney of the present Thirteenth District shall be appointed as an additional assistant District Attorney of the Fifteenth District, to serve until December 31, 1936, and shall receive as compensation for his services, in addition to the annual salary paid by the State, as provided by Article VII, Section 62 of the Constitution, an additional salary of Three Thousand Two Hundred Fifty and No/100 ($3,250.00) Dollars per annum, payable monthly, to be paid pro rata by the police juries of the

parishes of said rearranged Fifteenth District, their pro rata to be determined by the assessed valuation of each preceding year. No successor shall be appointed to said additional assistant." This provision is hereby declared to be unconstitutional, null, and void.

It is further ordered that relator, R. Lee Garland, pay the costs of this court and of the district court.

O'NIELL, C. J., is of the opinion that Act No. 3 of the Third Extraordinary Session of 1935 is entirely unconstitutional.

ROGERS, J., dissents from the ruling that Act No. 3 of the Third Extraordinary Session of 1935 is constitutional.

ODOM, J., dissents, being of the opinion that Act 3 of the Third Extraordinary Session of 1935 is unconstitutional.

O'NIELL, Chief Justice (dissenting).

The question in this case is whether Act No. 3 of the Fourth Extraordinary Session of the Legislature of 1935, which rearranged the Thirteenth and the Fifteenth judicial district, is unconstitutional, particularly in that it removed R. Lee Garland from the office of district attorney for the old Thirteenth judicial district.

Before this statute was enacted the Thirteenth judicial district was composed of two parishes, namely, St. Landry and Evangeline. B. H. Pavy was the district

Judge and R. Lee Garland was the district attorney in that district. They both resided in the parish of St. Landry, and had been elected by the voters of the district, for terms of six years, which would not have expired until the end of 1936.

The Fifteenth judicial district was then composed of three parishes, namely, Acadia, Lafayette and Vermilion. That district had two judges and, of course, a district attorney.

By the first section of Act No. 3 of the Fourth Extraordinary Session of 1935, the Legislature detached the parish of St. Landry from the Thirteenth district and attached it to the Fifteenth district, thus leaving only the parish of Evangeline in the Thirteenth district, and adding St. Landry to the three other parishes, Acadia, Lafayette and Vermilion, in the Fifteenth district. The effect of this was to shift the residence of Judge Pavy and Mr. Garland from the Thirteenth into the Fifteenth district, or rather to shift the Thirteenth district away from their place of residence, and thereby to render them ineligible to hold office in that district. It is declared in the new statute that the Fifteenth district shall have three judges until the expiration of their present terms of office, meaning until the end of 1936, and thereafter shall have only two judges. That makes Judge Pavy one of the three judges of the Fifteenth district, until the end of 1936, at which time either he or another of the three judges now in that district must go out of office, if the statute is not violative of the Constitution.

In the second section of the statute it is declared that all suits pending in the Thirteenth judicial district court for the parish of St. Landry are transferred to the Fifteenth judicial district court for the parish of St. Landry. All of which means merely that the name of the district court in St. Landry parish is changed from "Thirteenth Judicial District Court for the Parish of St. Landry" to "Fifteenth Judicial District Court for the Parish of St. Landry," and that the other area now in that district, instead of being the parish of Evangeline, is composed of Acadia, Lafayette and Vermilion.

By the third section of the statute the Governor was authorized to appoint a judge and a district attorney for the Thirteenth judicial district, comprising only the parish of Evangeline, to serve until their successors are elected. It is declared also that their successors, as well as the successors of two of the judges and the district attorney for the Fifteenth judicial district, shall be elected at the congressional election in November, 1936, and every six years thereafter. It was declared also in this section of the statute that the incumbent district attorney for the old Thirteenth judicial district, meaning R. Lee Garland, should be appointed as an additional assistant district attorney for the Fifteenth judicial district, to serve until the end of 1936, and that he should receive as compensation for his services in his new office, and in addition to the annual salary ($750) paid by the state, under section 62 of article VII of the Con-

stitution, an additional salary of $3,200 per annum, payable monthly, by the four parishes now in that district, "their pro rata to be determined by the assessed valuation of each preceding year." It is declared also in this section of the statute: "No successor shall be appointed to said additional assistant." That also means R. Lee Garland.

The fourth section, which is the last section, of the act declares "That all laws or parts of law in conflict herewith be and they are hereby repealed."

On the 3d day of October, 1935, which was the second day after the statute went into effect, the Governor appointed J. Cleveland Fruge as judge and E. Herman Guillory as district attorney for the Thirteenth judicial district, comprising only the parish of Evangeline.

Garland was not satisfied with being demoted, so to speak, or being transferred from the office of district attorney in and for the old Thirteenth judicial district to the temporary office of an additional assistant district attorney in and for the newly enlarged Fifteenth judicial district, during the term of office for which he, Garland, had been duly elected by the voters of the old Thirteenth judicial district. He therefore brought this suit, being an intrusion-into-office suit, against E. Herman Guillory.

Garland contends that Act No. 3 of the Fourth Extraordinary Session of the Legislature of 1935, which has the effect of removing him from office before the expiration of the term for which he was

duly elected, is unconstitutional, for several reasons. The principal reason for which Mr. Garland contends that his term of office, for which he was duly elected, cannot be cut off by a mere act of the Legislature, or without an amendment of the Constitution, is that the term of office is fixed in the Constitution, in sections 33 and 58 of article 7, and will not expire until the end of the year 1936. That complaint would have been obviated if the Legislature had provided in this new statute that it should not go into effect until the expiration of the terms of office of the incumbent judges and district attorneys in the two districts, all of whose terms will expire at the end of 1936.

The defendant, E. Herman Guillory, pleaded that Garland had no cause or right of action because, as Guillory contends, the new statute does not violate any provision in the Constitution.

Judge Fruge, being personally interested in the outcome of the case, recused himself; and he called in Judge Pickerel, of the Fourteenth judicial district, to hear and decide the case.

Judge Pickerel, after hearing the case, decided that the statute was unconstitutional in many respects, but that it was valid in so far as it made Mr. Garland a nonresident of the Thirteenth judicial district, and made him therefore ineligible to hold the office of district attorney for that district. Judge Pickerel, therefore, dismissed Garland's suit, on the ground that he had no right or cause of action.

Garland appealed from the judgment of Judge Pickerel, to the Supreme Court. Guillory, answering the appeal, asked that the judgment of Judge Pickerel should be reversed or amended in those respects in which the judge said that Act No. 3 of the Fourth Extraordinary Session of 1935 was unconstitutional, and asked that the judgment should be otherwise affirmed.

The majority opinion of this court maintains that Act No. 3 of the Fourth Extraordinary Session of 1935 is constitutional and valid in every respect, except in so far as it provides: "The District Attorney of the present Thirteenth District [meaning Mr. Garland] shall be appointed as an additional assistant District Attorney of the Fifteenth District, to serve until December 31, 1936," etc. It is held that this provision of the statute is unconstitutional and of no effect, but that the unconstitutionality and invalidity of this provision does not affect any other of the provisions of the statute. The result is that Mr. Garland loses the office of district attorney for the old Thirteenth judicial district, by virtue of the statute, and loses the temporary office of additional assistant district attorney for the Fifteenth judicial district, in spite of the statute.

My opinion is that Act No. 3 of the Fourth Extraordinary Session of 1935 is entirely unconstitutional.

I agree with Judge Pickerel that the statute is unconstitutional in its attempt to authorize the Governor to appoint a judge for the Thirteenth judicial district, comprising only the parish of Evangeline.

That part of the statute violates section 33 of article 7 of the Constitution, which requires that the district judges shall be elected by the voters of their districts. I agree with Judge Pickerel also in his holding that this statute is unconstitutional in so far as it attempted to authorize the Governor to appoint a new district attorney for the Thirteenth judicial district, comprising only the parish of Evangeline. This part of the statute violates section 58 of article 7 of the Constitution, which requires that the district attorneys shall be elected by the voters of their districts. These provisions in the statute violate also section 69 of article 7 of the Constitution, which permits the Governor to fill a vacancy in the office of a district judge or district attorney, when the unexpired portion of the term is less than one year, but requires a special election, by the voters of the district, to fill a vacancy when the unexpired portion of the term is a year or more. The unexpired portion of the term of office of Judge Pavy, as judge of the Thirteenth judicial district court for the parish of Evangeline, and the unexpired portion of the term of office of R. Lee Garland, as district attorney for the Thirteenth judicial district, was a year and three months, when this statute went into effect, removing them from their offices. The Governor, therefore, was, by the very terms of section 69 of Article 7 of the Constitution, denied the right to appoint a successor to B. H. Pavy, as judge, or a successor to R. Lee Garland, as district attorney, for the Thirteenth judicial district, to fill the vacancies caused by their removal from the

offices to which they had been elected, respectively.

Act No. 3 of the Fourth Extraordinary Session of 1935 is unconstitutional also in that it removes Mr. Garland from office before the expiration of his term of office, which is fixed in the Constitution, and which is therefore not subject to curtailment by a mere act of the Legislature, or without an amendment of the Constitution. Section 33 of article 7 of the Constitution fixes the term of office of the district judges at six years, and provides that they shall be elected at the congressional election every six years, commencing in November, 1924. And section 58 of the same article declares that a district attorney for every judicial district shall be elected "at the same time and for the same term as is provided herein for district judges." Mr. Garland was elected in November, 1924, for the term of six years, and again in November, 1930, for another term of six years. As the term of office of Mr. Garland, as district attorney for the Thirteenth judicial district, was fixed in the Constitution, it was not subject to curtailment by a mere act of the Legislature, or without an amendment of the Constitution in that respect. Mr. Garland was not subject to removal from office, during the term for which he was elected, except by the process of impeachment for one of the causes enumerated in section 1 of article 9 of the Constitution, or by being addressed out of office by a vote of two-thirds of the members of each House of the Legislature, as provided in section 3 of the same article, or by a

suit for removal from office, as prescribed in section 6, for one of the causes enumerated in section 1, of the same article of the Constitution. It is not even contended that Mr. Garland was subject to removal from office for any of the causes mentioned in article 9 of the Constitution. The majority opinion in this case is merely that the term of office for which Mr. Garland was elected was subject to abridgment, as an incident of an act of the Legislature rearranging judicial districts, under the authority of section 34 of article 7 of the Constitution, which authorizes the Legislature to rearrange the judicial districts. The answer to that, of course, is that the Legislature may exercise its authority to "rearrange the judicial districts" without violating any provision of the Constitution, by simply enacting a statute which shall go into effect at the expiration of the terms of office of the incumbent judges and district attorneys of the rearranged districts. If section 34 of article 7 of the Constitution is construed and acted upon in that way, it will not conflict with any other provision in the Constitution. If construed as it is construed in the majority opinion in this case, it will conflict with many provisions in the Constitution.

The majority opinion in this case, as I understand it, is that the Legislature may put into effect at any time a statute rearranging two or more judicial districts, even though the putting into effect of the statute before the expiration of the current six-year term of the district judges and district attorneys throughout the

state, as fixed in the Constitution, will be contrary to several provisions of the Constitution, by putting men out of office before the expiration of their terms, and by creating vacancies for the Governor to fill by appointment, even where the unexpired portion of the term is a year or more. If that is a correct interpretation of the authority of the Legislature to "rearrange the judicial districts," the Legislature has the authority, immediately after the election of all of the district judges and district attorneys throughout the state, to put every district attorney out of office, and to authorize the Governor to appoint their successors for the unexpired portion of the six-year term, and to transfer every district judge into a district in which he was not elected by a majority of the voters thereof. · I respectfully submit that that is an unreasonable and illogical interpretation of ·section 34 of article 7, which merely declares: "The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district." It does not follow, from that language, that the Legislature may make a rearrangement of the judicial districts in mid-term, or at a time which will necessitate a violation of other provisions of the Constitution. A cardinal rule of interpretation, of the Constitution or of a statute, is to so construe each provision that all of the provisions will harmonize, and so that one provision will not conflict with another, if the provisions of the Constitution or statute are susceptible of such a construction or interpretation.

Section 34 of article 7 is susceptible of the interpretation, which is the only logical interpretation, that any rearrangement which the Legislature may make of the judicial districts throughout the state must be made effective only at the expiration of the term of office of the district judges and district attorneys throughout the state, as fixed in the Constitution.

In the majority opinion in this case, in support of the proposition that the term of office of a district attorney, whose term is fixed in the Constitution, may be cut off by an act of the Legislature, and without a constitutional amendment on the subject, the case of State v. Dowling, 167 La. 907, 120 So. 593, 597, is cited. But the majority of the members of the court seem to overlook the fact, or make no distinction because of the fact, that Dr. Dowling's term of office, as president of the state board of health, was not fixed in the Constitution; whereas, R. Lee Garland's term of office, as district attorney, is fixed in the Constitution. It was because of that distinction that this court held, in the case of State v. Dowling, that the statute (Act No. 126 of 1928) which shortened the term of office which Dr.· Dowling held, as president of the state board of health, did not violate any provision in the Constitution. That was the reason for the decision in Dr. Dowling's Case; and it would so appear from a reading of the majority opinion in the present case if the author of the opinion had quoted all that was said on this subject in Dr. Dowling's Case, instead of quoting only the last part of the para-

graph on this subject. Here is what was said on this subject in Dr. Dowling's Case, viz.:

"It is argued that the office of president of the state board of health is a constitutional office, and, therefore, that the term of the office cannot be shortened by an act of the Legislature, to the prejudice of an incumbent in office at the time of the passage of the act. The office of president of the state board of health is a constitutional office in the sense only that the Constitution commands the Legislature to create the office; but, inasmuch as the Constitution did not fix the term of office, and impliedly left that authority with the Legislature, the term of office is subject to change at any session of the Legislature." [That part of what was said in Dr. Dowling's Case is not quoted in the majority opinion in the present case, but only what follows immediately is quoted, thus:] "There is a provision in the Constitution, section 40 of article 7, which forbids the Legislature to curtail the term of office or salary of any judge in office, and declares that any legislation so affecting a judicial office shall have effect only at the end of the term of the incumbent in office at the time of the passage of the act. If the writers of the Constitution had intended to impose the same restriction upon legislation affecting the terms of office or salaries of other officers, they would not have confined the restriction to legislation affecting the terms of office and salaries of judges. In fact, no such restraint would have been imposed upon legislation affecting the

terms of office or salaries of judges, if the restraint went without saying as to public officers generally."

That part of what was said in Dr. Dowling's Case that is quoted in the majority opinion in this case might be misunderstood by one who happens to read it without reading also what immediately precedes it in the opinion rendered in Dr. Dowling's Case. But, even standing alone, it seems plain to me that the quotation taken from the Dowling Case, in the majority opinion in this case, has reference only to officers whose terms of office are not fixed in the Constitution, and hence that it cannot have reference to the office of district attorney. It must be borne in mind that there may be, and in fact are, judges whose offices are provided for in the Constitution but whose terms of office are not fixed in the Constitution. For example, section 52 of article 7 of the Constitution authorizes the Legislature to fix the salaries and tenures of office of the juvenile courts created for the parishes containing cities having 25,000 or more inhabitants. As another example, section 94 of the same article of the Constitution provides that the terms of office of the judges of the recorders' courts in New Orleans shall be fixed by the commission council. The Legislature intended, by section 40 of article 7 of the Constitution, to protect the terms of office of all judges, even where they were not fixed in the Constitution. A judge, therefore, is protected in his term of office, even though it may not be fixed in the Constitution; but no other officer's term of office is pro-

tected against being shortened by an act of the Legislature, unless the term of office is fixed in the Constitution. That is what was said in Dr. Dowling's Case, in explanation of our ruling that, inasmuch as Dr. Dowling's term of office, as president of the state board of health, was not fixed in the Constitution, the term of office could be shortened by an act of the Legislature. But Mr. Garland's term of office, as district attorney, is fixed in the Constitution, and therefore cannot be shortened by an act of the Legislature. Anyone will understand this, who reads the quotation from the opinion in the Dowling Case, in the majority opinion in this case, if the reader will bear in mind that what is said in this quotation has reference only to officers whose terms of office are not fixed in the Constitution.

In the Dowling Case, this court quoted, with the unanimous approval of the members of the court, as then constituted, the following expression, from the case of State ex rel. Downes v. Towne, 21 La. Ann. 490, viz.:

"It was not in the power of the Legislature to legislate him [Downes] out of office or to diminish or increase his term of office as fixed in the Constitution."

It is said in the majority opinion in this case that the decision rendered in the case of State ex rel. Downes v. Towne, which was rendered in 1869, "ceases to be of any value as a precedent or authority, because of the difference in the provisions of the Constitution of 1868 and the present Constitution of 1921." But the Dowling Case was decided on November 26, 1928, the petition for a rehearing being denied in January, 1929, which was long after the adoption of the Constitution of 1921. I respectfully submit, therefore, that the quotation from the decision rendered in the case of State ex rel. Downes v. Towne is as good authority today as it was when it received the unanimous approval of this court in the Dowling Case.

In support of the majority opinion, that the Legislature may rearrange the judicial districts in mid-term, or at any time, it is said in the majority opinion: "The ever changing state of human affairs imposes upon the Legislature the duty of adopting [perhaps meaning adapting] its legislation to the various phases which the condition of the country and the wants of the community may from time to time assume." Reference is made also to "the growth of the State in the future, the increase of its population and business, a possible increase of litigation," etc.; and, on the other hand, "the changing condition of a retrograding state in the amount of population, or even a decrease of litigation," etc. I respectfully submit that no such changing conditions could possibly make it necessary for the Legislature to suddenly and immediately rearrange the judicial districts, to the prejudice of the incumbents in the offices of judges and district attorneys in the districts affected by any such rearrangement. The Constitution takes care of any change in the volume of business or litigation in any judicial district or districts, by providing, in section 12 of article 7, that the Supreme Court may assign district judges, from one district to another, for any

cause, and may provide for the interchange of the judges or the district courts, "to secure the prompt and efficient administration of justice." It is not suggested that there was any such necessity for the immediate rearrangement of the judicial districts which were rearranged by Act No. 3 of the Fourth Extraordinary Session of 1935. A reference to the legend on any official or authentic map of Louisiana will show that the parish of Evangeline, which is all that is left of the Thirteenth judicial district, has a population of only 25,483 inhabitants, and an area of only 681 square miles; whereas the parish of St. Landry, which is now cut off of the Thirteenth district, has a population of 60,074 inhabitants, and an area of 964 square miles. While the Thirteenth district has now a population of only 25,483 inhabitants and an area of only 681 square miles, the Fifteenth district has now a population of 171,911 inhabitants, and an area of 3,103 square miles; and, after the expiration of next year, the man power of judges and district attorneys and assistant district attorneys will be the same in each district as it was before the rearrangement was made.

Mr. Garland alleged in his petition in this suit that Act No. 3 of the Fourth Extraordinary Session of 1935 was not adopted by a two-thirds vote of the membership of the Legislature, elected as such in pursuance of sections 8 and 9 of article 3 of the Constitution, and that therefore the statute was enacted in violation of section 34 of article 7 of the Constitution, which requires "a two-thirds vote of the membership of each house" to increase or decrease the number of judges in any district. It is said in the majority opinion in this case that a "two-thirds vote of the membership of each house," as required by section 34 of article 7 of the Constitution, means two-thirds of a quorum of each House. I do not subscribe to that. "A two-thirds vote of the membership of each house" means "a two-thirds vote of the members elected to each house," and not "two-thirds of a quorum of each house." I do not see the difference between "a two-thirds vote of the membership of each house" and "a two-thirds vote of the members elected to each house." Inasmuch as sections 8 and 9 of article 3 of the Constitution require that the members of each House shall be elected, there ought to be no difference between "the membership of each house" and "the members elected to each house."

I respectfully dissent also from the majority ruling in this case that the unconstitutionality of the provision in the statute which makes Mr. Garland an additional assistant district attorney for the Fifteenth judicial district should not, of itself, render the whole statute invalid. I see no reason for presuming that the Legislature would have enacted this statute, if it had been known that the appointment of Mr. Garland as an additional assistant district attorney for the Fifteenth judicial district was unconstitutional. The Legislature did not insert in this statute the clause which is now so often inserted in statutes of this character, that if any provision of the statute is found to be un-

constitutional the unconstitutionality thereof shall not affect the other provisions of the statute. The best reason for believing that the Legislature did not intend that this statute should stand without Mr. Garland's being appointed an additional assistant district attorney for the Fifteenth judicial district is that the Legislature did not adopt the statute without that provision. It is so interrelated with the other provisions of the statute that the statute should not be upheld without it. My own opinion, however, is that the statute is thoroughly unconstitutional.

ROGERS, Justice (dissenting).

It is my opinion that Act No. 3 of the Fourth Extraordinary Session of the Legislature of 1935 is unconstitutional in its entirety. The statute in authorizing the Governor to appoint a judge and a district attorney for the Thirteenth judicial district, composed of only the parish of Evangeline, is violative of section 33 of article 7 of the Constitution, requiring that district judges shall be elected, and of section 58 of article 7 of the Constitution, requiring that district attorneys shall be elected. These statutory provisions are also violative of section 69 of article 7 of the Constitution, permitting the Governor to fill vacancies in the offices of district judges and district attorneys only where the unexpired portion of the term is less than one year, but requiring in all other cases that the vacancy shall be filled by a special election. The unexpired portion of the terms of Judge Pavy as judge and Mr. Garland as district attorney of the Thirteenth judicial district was a year and three months when the statute under review became effective.

The statute so far as it attempts to remove the relator Garland from office before the expiration of his term is violative of sections 33 and 58 of article 7 of the Constitution, the former section fixing the term of office of the district judge at six years and the latter section fixing the term of a district attorney the same as that of a district judge.

The statute so far as it provides that the district attorney of the present Thirteenth judicial district (meaning Garland) shall be appointed an additional assistant district attorney of the Fifteenth judicial district to serve to the end of his term as district attorney of the Thirteenth judicial district is violative of section 60 of article 7 of the Constitution which authorizes the district attorney of each judicial district to appoint and remove his assistants.

Under the allegations of Garland's petition, which must be accepted as true for the purposes of defendant's exception, the statute was not passed by a two-thirds vote of the membership of each House, which was in violation of section 34 of article 7 of the Constitution requiring such a vote to increase or decrease the number of judges of any district. In my opinion, "a two-thirds vote of the membership of each house" as required by the constitutional provision, means a two-thirds vote of the members elected to each House, and not "two-thirds of a quorum of each house," as held by the majority opinion.

The effect of the first section of the statute under review is to remove Garland from his office of district attorney for the Thirteenth judicial district before the expiration of the term for which he was duly elected. The other three sections are predicated upon the validity of the first section. If the first section be unconstitutional, then all the other sections, independently of their inherent invalidity, are likewise unconstitutional. Therefore, it is not my purpose nor do I consider it necessary to discuss the unconstitutionality of the statute, except so far as it attempts to legislate the relator Garland out of office, which I think is clearly beyond the power of the Legislature to do.

It cannot be disputed that a district attorney as well as a district judge is a constitutional officer. Both are so designated in the Constitution itself. Section 33 of article 7 of the Constitution fixes the term of office of the district judges at six years and provides that they shall be elected at the congressional election every six years, commencing in November, 1924. Section 58 of the same constitutional article declares that a district attorney for every judicial district shall be elected "at the same time and for the same term as is provided herein for district judges." Garland was elected in November, 1924, for the term of six years, and he was also elected in November, 1930, for another term of six years, which will not expire until the end of the year 1936. Therefore, the legislature cannot directly or indirectly abridge the term of Garland's office,

the tenure of which is fixed in the Constitution.

An office which has been provided by the Constitution may not be abolished by an act of the Legislature. Such an office may be abolished only by a new Constitution or by an amendment to an existing one. 46 Corpus Juris, p. 935, section 30 under title "Officer." A number of authorities are cited in support of the text.

The Legislature cannot remove an officer where the term of his office is fixed by the Constitution, and the same result cannot be effected indirectly by transferring the office to another or by abbreviating the term. Throop, Pub. Off., § 20.

The majority opinion that the term of office of a district attorney, although fixed in the Constitution, may be abridged by legislative act at any time is based on section 34 of article 7 of the Constitution providing: "The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district." The case of State v. Dowling, 167 La. 907, 120 So. 593 is also cited in the opinion in support of the proposition.

I respectfully submit that the decision in the Dowling Case is not authority for the majority opinion rendered in this case. What was decided in the Dowling Case, as shown by paragraph No. 7 of the syllabus, prepared by the Editorial Staff of the West Publishing Company, was that:

"The office of the president of state board of health, though a 'constitutional office,' under Const. 1921, art. 6, § 11, is such only in the sense that the Constitution commands the Legislature to create the office, but, since the Constitution does not fix term of office, it impliedly leaves that authority with the Legislature, and the term of office is subject to change at any session of the Legislature, in view of article 7, § 40." In other words, that as Dr. Dowling's term of office as president of the state board of health was not fixed in the Constitution, the statute which shortened the term of that office was not violative of any constitutional provision.

The language quoted from the Dowling Case in the majority opinion clearly has reference only to those officers whose terms are not fixed in the Constitution, among whom district attorneys are not included. Dr. Dowling was not a constitutional officer so far as his term of office was concerned, and therefore his term could have been, as it was, abridged by the Legislature. But Garland's term of office, as district attorney, is fixed in the Constitution, and therefore his term cannot be abridged by a legislative act.

I cannot subscribe to the majority view that section 34 of article 7 of the Constitution, authorizing the Legislature to rearrange the judicial districts, justifies such rearrangement to take effect in midterm. In construing a constitutional provision, the whole instrument is to be taken together and every part is to be made consistent with the other parts. The construction placed upon section 34 of article 7 of the Constitution nullifies sections 33 and 58 of article 7 which provide that district judges and district attorneys, when elected, shall hold their terms of office for six years. The power given the Legislature by section 34 of article 7 of the Constitution to rearrange the judicial districts must be so exercised as to leave the incumbent judges and district attorneys in their offices until the expiration of their terms. In this way only can a conflict between the provisions of the Constitution be avoided and the provisions themselves be made to harmonize.

The established rule that the term of a constitutional officer cannot be abridged by the Legislature was discussed and enforced in the case of State ex rel. Gibson v. Friedley, 135 Ind. 119, 34 N.E. 872, 875, 21 L.R.A. 634. In the course of its opinion, the Supreme Court of Indiana correctly remarked: "If the legislature, by a special act, may remove one judge or one prosecuting attorney, it may remove any and all such officials in the state, and hence they would be at the mercy of any legislature whose enmity or ill-will they may have incurred." The court also correctly stated:

"The office of circuit judge, as well as prosecuting attorney, is a public trust, committed by the public to an individual, the duties and functions of which he is bound to perform for the benefit of the public, and entitles him to exercise all the duties and functions of the office, and to take the fees and emoluments belonging to it. * * *

"There can be no such thing as an office without responsive duties and functions to be performed by the officer. It is not the mere right to receive an annual compensation, without the exercise of any corresponding duties. If the general assembly can transfer bodily the entire territory which constitutes the locality in which the judge or prosecuting attorney may lawfully exercise the functions and duties of his office, and attach that territory to another circuit, then it can strip the incumbents of their respective offices as effectually as it is possible to so do by any words that can be used. It is in fact as much a removal of the judge and prosecutor so deprived of all territory as would be a judgment of a supreme court removing either of them from his trust. It is not to be assumed that the framers of the constitution builded it so unwisely as to secure to a judge an office and its tenure, and the right to exercise all its prerogatives within a defined locality, for a period of six years, if he so long behave well, and by the same organic law intended that the general assembly might remove him, at its will, from the exercise of all the privileges and duties pertaining thereto, without a hearing, without a conviction for misconduct, under the guise of 'from time to time dividing the state into judicial circuits.' Such division may be exercised by the legislature where the act does not legislate judges and prosecutors out of their respective offices, but not otherwise."

In the majority opinion herein much stress is laid upon the fact that section 40 of the article 7 of the Constitution

which declares that no judge shall be affected in his term of office does not say that no district attorney, or other public officer, shall be affected in his term of office. But that section of article VII of the Constitution goes further, and declares, "and any legislation so affecting any judge or court shall take effect only at the end of the term of office of the judge or judges, incumbents of the court, or courts, to which such legislation may apply at the time of its enactment." Judge Pavy, the judge presiding over the Thirteenth judicial district court composed of the parishes of St. Landry and Evangeline, was clearly "affected in his term of office," by Act 3 of the Fourth Extraordinary Session of 1935. In fact, he was deprived of his office of judge of the Thirteenth judicial district court and a successor was appointed in his place. It is true, Judge Pavy was made one of the judges of the Fifteenth judicial district; but, nevertheless, the fact remains that he was "affected in the term of his office," and was in fact deprived of his office of judge of the Thirteenth judicial district court, by effect of the statute. Therefore, the statute, according to the precise language of the Constitution itself, should not have gone into effect, or it should not go into effect, until the expiration of the term of office which Judge Pavy held when the statute was enacted; that is to say, until the end of the year 1936. And the statute should not affect the term of Garland, the district attorney for the old Thirteenth judicial district, until the statute can validly go into effect; especially in view of section 58 of article 7 of the Constitution, which

provides that the district attorney in each district shall be elected "at the same time and for the same term as is provided herein for district judges."

In State ex rel. Downes v. Towne, 21 La.Ann. 490, which was quoted with approval in the Dowling Case, it was held that where the term of a public officer is fixed in the Constitution he cannot be legislated out of office, or his term of office diminished or increased. In State ex rel. Robinson v. Dranguet, 23 La.Ann. 784, the court, reaffirming that holding, said: "Time and reflection have only strengthened our conviction expressed" in State ex rel. Downes v. Towne. The holding was also approved in Lafayette Fire Ins. Co. v. Remmers, 29 La.Ann. 419.

But it is said in the majority opinion herein that the decision in State ex rel. Downes v. Towne has ceased to be a precedent, because the decision was rendered in 1869, under the provisions of the Constitution of 1868, which did not contain the provisions of section 34 of article 7 of the Constitution of 1921, authorizing the Legislature to rearrange the judicial districts or the provisions of section 40 of the same article of the Constitution of 1921, declaring that no judge shall be affected in his term of office during the term or period for which he is elected, and that any legislation so affecting any judge shall take effect only at the end of the term of the incumbent judge. Article 83 of the Constitution of 1868 authorized the Legislature to divide the state into judicial districts, which should remain unchanged for four years, but it appears

to me the majority of the members of the court overlooked the fact that the office which was in contest in the case of State ex rel. Downes v. Towne was not the office of *district* judge, but the office of *parish* judge, which office was abolished by the Constitution of 1879. Inasmuch as the contest was over the office of *parish* judge, in the case of State ex rel. Downes v. Towne, the fact that the Constitution of 1868 did not contain the provisions of section 34 of article 7 of the Constitution of 1921, authorizing the Legislature to rearrange the judicial districts, is a matter of no importance whatever. The fact that the Constitution of 1868 did not contain any such provisions as are contained in section 40 of article 7 of the Constitution of 1921, protecting judges in their terms of office, makes the decision which was rendered in State ex rel. Downes v. Towne as good authority to-day as if the office which was in contest in that case had not been a judicial office. It was only because article 86 of the Constitution of 1868 fixed the term of office of the judge of each *parish* court that this court said in State ex rel. Downes v. Towne that it was not in the power of the Legislature to legislate Judge Downes out of office "or to diminish or increase his term of office as fixed in the constitution." If the term of office of Judge Downes had not been fixed in the Constitution, he would not have been protected in his term of office by any such provision in the Constitution of 1868 as is embodied in section 40 of article 7 of the Constitution of 1921. Therefore, as Judge Downes was protected in his term of office by the Constitution of 1868 so

is the relator Garland protected in his term of office by the Constitution of 1921.

The case of State ex rel. Collens v. Clinton, 26 La.Ann. 406, 408, is cited in support of the majority opinion that the judicial districts of the state may be rearranged by legislative act. But in Lafayette Fire Ins. Co. v. Remmers, 29 La. Ann. 419 this court, after approving the rule announced in State ex rel. Downes v. Towne and State ex rel. Robinson v. Dranguet, as hereinabove shown, pointed out that the case of State ex rel. Collens v. Clinton was decided "under the special provisions of the constitution for the parish of Orleans, and so expressly stated, and the court was divided." And the court in the Remmers Case expressly refused to approve the decision in State ex rel. Collens v. Clinton, stating: "Without being called upon to give our assent to that decision [State ex rel. Collens v. Clinton], it is enough to say that it does not therefore and was not intended to vary the rule announced in the two former cases of Downes and Robinson just quoted."

The court quoted approvingly the following from Commonwealth v. Gamble, 62 Pa. 343, pages 352, 353, 1 Am.Rep. 422, relative to a constitutional provision providing for the election of judges by the electors of their respective judicial districts, viz.:

" 'It is obvious that this *secures* to the electors of every judicial district *the right* to choose their judges; and it is equally certain that if after an election the Legislature may transfer and make the district part of another district, when the inhabitants have had no participation, or chance of participation, in the election of a judge thus assigned to preside over them, that such an act would utterly ignore the provision of the constitution which provides for the election of judges by the electors of the respective districts.' And again: 'If this may be done in this instance, it may be repeated.' And so the territory and people might be transferred from time to time indefinitely, without ever exercising the right of participating in the election of a judge at all, 'and all such legislation must be utterly void if the constitutional provision for the election of judges be of the slightest consequence.' "

The decision in State ex rel. Collens v. Clinton, 26 La.Ann. 406, 408, was, in effect, overruled in the later case of State ex rel. Collens v. Jumel, 30 La.Ann. 861. In the first Collens Case it was held that Collens was not entitled to any salary after his court was abolished. In the second Collens Case, it was held that decision was not res judicata as to the salary not included in the suit and that, excluding the salary demanded in the first suit, Collens was entitled to his salary to the end of the term for which he was elected and commissioned, a period of three years and seven months. It is clear that the court in the second suit allowed Judge Collens his full salary on the theory that his office had not been legally abolished and that the decision in the first suit was wrong. In fact, in the second suit the court expressly declared that in no instance had the doctrine announced in the first suit found any favor. We quote from

State ex rel. Collens v. Jumel, as appropriate to this case, the following, viz.:

"All devices tending to abrasion of the independence of the judiciary, or to subject it to legislative or popular caprice, have been uniformly condemned by the wisest men of our country. Numerous instances have occurred in the States of attempts by the legislatures to oust judges from their constitutional offices, and deprive them of their salaries, and in no instance has the doctrine announced in the relator's case in the twenty-sixth Annual [State ex rel. Collens v. Clinton] found any favour. A case in Illinois meets the point exactly. Ballou was elected a judge of the circuit court, was commissioned, and qualified, and two years afterwards and before the expiration of his term, the legislature repealed the act which created the circuit of which he was judge, and established another circuit in its stead. The court say: 'The question is, can the legislature expel a circuit judge from his office by creating a new circuit, and taking from him the territory which constituted his circuit. The bare reading of the constitution must convince any one that it intended to prohibit such a proceeding. It was the intention of that instrument to place the judges entirely above and beyond legislative control or interference, except by impeachment or address. It is the constitution which creates the office of circuit judge, and not the legislature. * * * It is unnecessary now to say whether the legislature may reduce the number of judicial districts by abolishing one and attaching its territory to another. If it may,

then the office would cease upon the expiration of the term of the judge, but until the expiration of his term, the constitution has not provided, nor has it authorized any mode of expelling him from his office.' (People ex rel. Ballou v. Dubois) 23 Ill. [547] 550."

It was only because the Constitution of Illinois fixed the term of office of the circuit judges that the Supreme Court of Illinois declared it was not within the power of the Legislature by repealing the act creating the circuit of which he was judge to expel Judge Ballou from his office before the expiration of his term. While the court found it unnecessary to pass on the question of the right of the Legislature to reduce the number of districts by abolishing one and attaching its territory to another, it distinctly held that if the Legislature had the right it could exercise it by making such reduction in the number of judicial districts take place or go into effect only at the close of the term of the judge of the district abolished. Obviously, the reasoning applied by the court to the office of district judge would have been applied likewise to the office of prosecuting attorney, if that office had been involved in the case. And I think the reasoning is appropriate to this case as showing the lack of power in the Legislature under the constitutional restrictions to rearrange Garland's judicial district so as to expel him from the office of district attorney before the expiration of the term for which he was elected.

The foregoing are some of the reasons which have impelled me to dissent from the majority opinion in this case.

On Application for Rehearing.

PER CURIAM.

This court has reviewed, in the cases of State ex rel. Porterie, Attorney-General, et al. v. Walmsley, Mayor, et al., 183 La. 139, 162 So. 826, and State ex rel. Porterie, Attorney General, et al. v. Matt G. Smith et al., 166 So. 72,[1] the proclamation and message of Governor John M. Parker, in connection with the calling of the Constitutional Convention of 1921, together with the address made by the president of the Constitutional Convention, the Honorable Hewitt Bouanchaud, making clear that it was the intention and purpose of the delegates to the Constitutional Convention in 1921, to revise the Constitutions of 1898 and 1913, by deleting and changing provisions in these former Constitutions, which guaranteed certain rights under the so-called "Home Rule Clauses," and revising these articles so as to grant, in effect, greater power to the Legislature, under the Constitution of 1921, than that granted by the former Constitutions. The idea was to have an elastic and flexible Constitution, adaptable to the present and the future.

In order to direct attention to exactly what was done by the Constitutional Convention of 1921 in carrying out its avowed intention, it may be observed that the Constitutions of 1898 and 1913 contained article 110, which was as follows:

"The General Assembly shall not have power to increase the number of district judges in any district."

The Constitution of 1921 abrogated article 110 of the Constitutions of 1898 and 1913 for article 7, § 34 of the Constitution of 1921, which provides:

"The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district."

Article 114 appeared in the Constitutions of 1879, 1898 and 1913, and reads as follows:

"No judge of any court of the State shall be affected in his term of office, salary, or *jurisdiction as to territory or amount*, during the term or period for which he was elected or appointed. Any legislation so affecting any judge or court shall take effect only at the end of the term of office of the judge or judges, incumbents of the court, or courts, to which such legislation may apply at the time of its enactment. This article shall not affect the provisions of this Constitution relative to impeachment or removal from office." (Italics ours.)

Article 114 of former Constitutions was deliberately changed by the Constitution of 1921, and appears as article 7, § 40, and reads as follows:

"No judge of any court of the State, except as otherwise provided in this Constitution, shall be affected in his term of office, salary, or *jurisdiction as to amount*, during the term or period for which he was elected or appointed; and any legislation so affecting any judge or court

---

[1] 184 La. 263.

shall take effect only at the end of the term of office of the judge or judges, incumbents of the court, or courts, to which such legislation may apply at the time of its enactment." (Italics ours.)

This change was absolutely essential and necessary by reason of the abrogation of article 110 of the Constitutions of 1898 and 1913 and the inclusion of article 7, § 34, in the Constitution of 1921, which granted to the Legislature the right to rearrange the judicial districts.

These changes in the Constitution of 1921 are most convincing of the intention of the Constitutional Convention of 1921, to vest the Legislature with enlarged authority to rearrange the judicial districts of this state.

It is to be noted that article 7, § 34, of the Constitution of 1921, supra, does not limit the authority of the Legislature to rearrange the judicial districts at the expiration of a term of office (as provided for in the previous Constitutions), but the authority to rearrange the judicial districts is granted with no restricting clause in this particular article.

In the case of Fontenot et al. v. Young et al., 128 La. 20, 54 So. 408, 412, which was decided on February 13, 1911, an attack was made on the constitutionality of Act 15, passed by the General Assembly of 1910, which Act purported to create, from the citizens and territory of St. Landry parish, a new parish to be called "Evangeline." In the course of the opinion, this court passed upon certain articles of the Constitution of 1898, which are interesting in the light of changes made in the Constitution of 1921, which, in effect, abrogated these articles:

"It is said that article 114 of the Constitution prohibits interference with the judge of the district court, either as to his territorial jurisdiction or his compensation during the term for which he was elected. But (waiving the fact that the supposed interference was by the Constitution itself, and not by mere legislative enactment) a sufficient answer to that contention is that there was no such interference, the creation of the new parish, within the limits of the old, making no change in the territorial jurisdiction of the judge, and there having been no attempt to make any change in his compensation.

"It is further said that the amendment to article 108, redistricting the state and assigning the parish of Evangeline to the Sixteenth judicial district, is not to take effect until January 1, 1912, and that the new parish must therefore remain unassigned and without a court until that time; and hence cannot be said to exist.

"But here we have to deal with two constitutional amendments adopted at the same time—the one, general in character, in that it deals with all the parishes in the state, and concludes with the proviso that it shall take effect from and after January 1, 1912; the other, a special enactment, dealing exclusively with the parish of Evangeline, providing that said parish shall be permanently organized on January 1, 1911, and that it 'shall form part of, and be included in, the Sixteenth judicial dis-

trict,' and 'that the judge of said district shall hold regular terms of his court for the parish of Evangeline, at the parish seat, at such times as he may fix, according to law.'

"And there can be no doubt, as it seems to us, construing the two amendments together, that the purpose was that the general redistricting should take effect on January 1, 1912, but that the parish of Evangeline should become part of the Sixteenth judicial district on January 1, 1911."

The court also said, on page 28, of 128 La., 54 So. 408, 411:

"It may be, as counsel think (though we find it unnecessary to express any opinion upon the subject); that, save for the matter of representation, the parish of Evangeline might have been established and organized without amending the Constitution, but that possibility did not deprive the General Assembly of the authority to propose, or the people of the state of the power to adopt, any such amendment, not in conflict with the Constitution of the United States, as they saw fit."

Rearrangement of judicial districts under the Constitution of 1898 was accomplished by constitutional amendments. Article 108 of this Constitution was amended by Act 216 of 1906, and articles 107 and 108 were amended by Act 311 of 1910, both of which acts were adopted as constitutional amendments, and the number of districts increased by the latter amending act from "not less than

twenty nor more than twenty-nine judicial districts, the parish of Orleans excepted," provided for in the Constitution of 1898 to, "not less than twenty nor more than thirty-two judicial districts, the Parish of Orleans excepted."

Although the above quotation from Fontenot v. Young, supra, would seem to indicate there was some doubt as to the necessity of a constitutional amendment to accomplish this object, it is significant that the Legislature of 1910 pursued the constitutional amendment method of accomplishing redistricting.

Unquestionably, the Constitutional Convention, which framed the Constitution of 1921, was familiar with the cumbersome method necessary to accomplish redistricting under the Constitutions of 1898 and 1913, and deliberately changed Articles 110 and 114 of these Constitutions by incorporating article 7, §§ 34 and 40, in the Constitution of 1921, so as to leave no doubt of the Legislature's authority to rearrange judicial districts without the necessity of a constitutional amendment.

This court finds itself without authority or precedent to constitute itself a seven-man Constitutional Convention to rewrite the Constitution of 1921, in order to deny the clear grant of authority to the Legislature to rearrange judicial districts. In times past, this court has expressed itself in no uncertain terms as to its lack of authority to disregard clear and unambiguous grants of authority by the Constitution, as follows:

"We say 'elsewhere in the Constitution,' because, if the power is expressly granted, we disclaim the right to limit or control it by considerations outside of the Constitution. We are not the makers but the expounders merely of the paramount law. We cannot add one jot or tittle to its terms. We cannot, by glosses and interpretations, subtract one particle from its substance. It would be rebellion in a Judge to say that a plain and unqualified grant of power given by the Constitution to a particular department of the government was null, because he thought it was against 'common right.' And it would be an assumption of sovereign authority for the Judge to say: 'I will construe, qualify and pare away this unqualified grant of power, so as to make it consort with my ideas of common right.'

"Fixing our eyes, then, on Article 97 of the Constitution, as the source and measure of the legislative power in this instance, we find it to be untrammeled by any conditions or reservations. It says simply that the class of officers to which the Sheriff belongs 'shall be removable by an address of a majority of the members of both Houses.'" State of Louisiana, on the Relation of John M. Bell v. Joseph Hufty, 11 La.Ann. 303, at page 308.

Finally, it is said that we held that two-thirds of the membership was two-thirds of a quorum, and therefore the act could be passed by less than a majority of the votes of the elected members of each House. We gave expression to no such idea. The opinion plainly states that there is a clear distinction between the terms requiring the votes of two-thirds of the membership of each House required to increase the number of judges, and other provisions of the Constitution requiring two-thirds of the members elected to each House to pass certain kinds of legislation.

The former means two-thirds of the quorum present, when more than a majority of those elected to each House have voted on a bill; the latter means two-thirds of the entire membership authorized to be elected to each House.

Rehearing refused.

O'NIELL, C. J., and ROGERS, J., adhere to their dissenting opinions.

ODOM, J., adheres to his original dissent.

166 So. 117