TUCKER, Judge.
In this suit plaintiffs, R. Harmon Drew, Parey P. Branton and Warren E. Dietrich, appeal from the summary judgment of the trial court dismissing their suit against the defendant, Mary Evelyn Parker, Treasurer, State of Louisiana, in which the plaintiffs had sought to have Acts Nos. 24, 25 and 26 of the Regular Session of the Legislature of 1970, amending respectively LSA-R.S. 13:102, 13:311 and 13:691, declared unconstitutional and invalid, as being in contravention of Sec. 40 of Article 7 of the La.Const. of 1921, as amended.
The facts are undisputed, and the questions of law posed by the plaintiffs for resolution are quoted from plaintiffs’ memorandum as follows:
“1. What is the legal definition of ‘affect’ ?
2. Does the general provision of Section 34, Article 3 of our constitution supersede Section 40, Article 7 ?
3. If the provisions of Section 34, Article 3 fall within ‘except as otherwise herein’ provision of Article 7, Section 40, doesn’t the following clause prevail in determining when said salary change shall become effective?”
In this connection the main thrust of the plaintiffs’ position is that the provisions of Sec. 40, Art. 7 prohibit the increase of the salaries of the judges of Supreme Court, of the Court of Appeal, and of the District Court under the specific provisions of the said Sec. 40, Art. 7 of the Louisiana Constitution of 1921, as amended, and, if Sec. 34, Art. 3, a general pronouncement has any application whatever with respect to the salaries of sitting judges, it could have effect only with reference to a sitting judge when his term expired and he was reelected for another term.
Here plaintiffs’ “modus operandi" is to enjoin defendant Mrs. Parker from honoring the salary warrants of those judges of the state of Louisiana, including the judges of all courts from the level of district judges through the supreme court justices, whose salaries were increased by said Acts 24, 25 and 26 of the 1970 Louisiana Legislature, contending that said enactments are in direct conflict with the specific provisions of said Sec. 40 of Article 7, which is quoted as follows:
“No elected judge of any court of the State, except as otherwise provided in this Constitution, shall be affected in his term of office, salary, or jurisdiction as to amount, during the term or period for which he was elected; and any legislation so affecting any such judge or court shall take effect only at the end of the term of office of such judge or judges, incumbents of the court, or courts, to which such legislation may apply at the time of its enactment; provided however that nothing in this amendment shall affect the present provisions of this Constitution with respect to judges appointed to fill an unexpired term of less than one year under the provisions of this Constitution. The term of office, salary, or jurisdiction as to amount, during the term or period for which such judges were appointed shall in no way be changed by this amendment. (As amended Acts 1940, No. 386, adopted Nov. 5, 1940.)”
Sec. 34 of Art. 3 of the Constitution, according to plaintiffs having no application *358 to the salaries of judges, contains the following language:
“Salaries of public officers, whether fixed in this Constitution or otherwise, may be changed by vote of two-thirds of the members of each House of the Legislature.”
The plaintiffs at the outset strongly urge that the Legislature is and has been powerless by the specific provisions of said Sec. 40, Art. 7 to increase or diminish the salaries of judges which are fixed respectively in Sections 6, 19 and 35 of said Article 7 at the sum of $8,000.00 per annum for a supreme court justice; $6,000.00 per an-num for a court of appeal judge and $5,-000.00 per annum for a district judge. Of course, the plaintiffs are limiting their attack to the constitutionality and validity of Acts 24, 25 and 26 of the Regular Session of the Louisiana Legislature for 1970, which position, if maintained, would have the net effect of reducing the salary of the chief justice of the supreme court from an annual salary of $37,500.00 to $27,500.00, the associate justices of the supreme court from an annual salary of $37,500.00 to $25,000.00; a court of appeal judge from an annual salary of $35,000.00 to $24,000.-00; and a district judge from an annual salary of $20,500.00 to $15,000.00. Presumably any legislative enactments requiring or permitting the various parishes to provide supplements to the salaries of district judges subsequent to the adoption of the assailed legislative enactments would also fall because of the constitutional pronouncement. Certainly under plaintiffs’ interpretation sitting district judges would not be entitled to collect such a salary supplement authorized or required while he was on the bench until his present term expired, and his new term commenced.
Incidentally, since the inception of the 1921 Constitution, following the requirements set forth in Sec. 34 of Art. 7 of said document, numerous sessions of the legislature have enacted into law bills passed by two-thirds of the respective members of both houses increases of the salary emoluments of judges at all levels of the court system. In no instance since 1921 has a judge’s salary been elevated or diminished by constitutional fiat or declaration. This does not suggest that in the absence of previous attacks against similar legislative enactments, it is in any sense determinative of the issues posed in this litigation.
We accept plaintiffs’ contention that generally a constitutional provision dealing specifically with a given situation outweighs and overcomes a constitutional pronouncement with only general application thereto. See State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94 (1936), and cases legion in number throughout the jurisprudence in this state and the other states of the union.
Plaintiffs vigorously maintain that the provision in said Sec. 34 of Art. 3 does not fall within the “except as otherwise provided” clause in Sec. 40 of Art. 7, and in no event could a salary raise accomplished by legislative enactment affect a sitting judge until his current term had expired. In support of this thesis they cite Garland, supra, and State ex rel. Saint v. Dowling, 167 La. 907, 120 So. 593 (1929). The Garland case is concerned with a legislative re-arrangement of a judicial district under Sec. 35 of said Art. 7 with the result that the subject district attorney was legislated out of office prior to the end of his term, and the Dowling case deals with the tenure or term of office of a president of the State Board of Health. The supreme court stated in Guillory at 184 La. 338, 166 So. 97 that “a judge is the only public officer whose term of office or salary cannot be curtailed or affected by an act of the Legislature during the term or period for which he was elected, ‘except as otherwise provided in this Constitution,’ which means, of course, that a judge, may also be removed from office, during his term, by impeachment, or by address out of office, or by suit to remove from office brought in a court of competent jurisdiction * * As stated in plaintiffs’ brief *359 there is similar language in Dowling at 167 La. 919, 120 So. 597, that Sec. 40 of Article 7 prohibits the Legislature from curtailing the term of office or salary of any judge in office and such legislation so affecting a judicial office shall have effect “only at the end of the term of the incumbent in office at the time of the passage of the act.” With organ the Supreme Court further stated in Dowling, “If the writers of the Constitution had intended to impose the same restriction upon legislation affecting the terms of office or salaries of other officers, they would not have confined the restriction to legislation affecting the terms of office and salaries of judges. In fact, no such restraint would have been imposed upon legislation affecting the terms of office or salaries of judges, if the restraint went without saying as to public officers generally.”
Of course, as previously stated, the Supreme Court was concerned in Guillory and Dowling with matters foreign to judges’ salaries and the references made therein to the provisions of said Sec. 40 of Art. 7 amounted to dicta. Our research has not disclosed cases nor have such been cited to us dispositive of the instant issues in the jurisprudence of this state.
We believe it wise at this juncture to consider the legislative history of this constitutional article. In the Constitutions of 1852 and 1864 the analogous provisions read “diminished”. In 1868 it was changed to read “increased or diminished”. In the Constitutions of 1879, 1898 and 1913 the word “affected” was used. Does this historical development denote an intention on the part of the framers of the various Constitutions to confine within the borders of the present Sec. 40 of Article 7 of the 1921 Constitution an increase or decrease of the salaries of judges? If this be the case, a legislative pay raise could be accomplished by a mere majority of the members of both houses of legislature, since the more onerous requirement of a two-thirds vote of both houses provided in said Sec. 34 of Art. 3 would not be applicable to judges, and the only hobble then arising would be that a sitting judge could not draw this increase until his current term had expired. Each and every legislative act increasing the salaries of judges down through the years has been brought to pass in strict compliance with the two-thirds vote rule set forth in Sec. 34 of Article 3.
It is, likewise, obvious the members of the many legislative sessions which have passed acts increasing the salaries of judges in compliance with Sec. 34 of Art. 3 have considered the words “affect” and “affecting” used in Sec. 40 of Art. 7 to have a detrimental connotation and the fact that these numerous increases in judges’ salaries have gone unchallenged lends credence to the view that the public as a whole has always interpreted “affect” to mean that their salaries could not be diminished during their terms of office.
Not only have the Legislatures since 1921 and the public as a whole seemingly considered the legal meaning of the word “affect” to have the detrimental connotation; but also every decision of the courts of this state, especially Dowling and Garland, though obiter dictum in all of the cases, considers the true meaning of the language used in Sec. 40 of Art. 7 to be protective and supportive of the interests of judges with regard to their terms of office and salaries. In the cited cases the courts invariably, in treating with the word “affect” define it as being prohibitory against curtailment of the term or a decrease of the salary of a sitting judge. In other words, this constitutional expression has always been described and interpreted judicially as a restraint against the Legislature from passing acts disadvantageous, injurious or detrimental to judges.
Ballantine’s Law Dictionary (1948) defines the word “affect” as follows: “The word is derived from the Latin, afficio, and sometimes means to act upon; to influence; but it is more frequently used in the sense of weakening, debilitating; acting injuriously upon persons and things *360 * * The same type of language is used in defining “affect” in Words and Phrases at page 307 as follows: “affect” is often used in the sense of acting injuriously upon persons; and hence when an act provides that nothing contained therein should be construed to “affect” the rights of any person, etc., it means that the section must not be so construed as to prejudice or injuriously affect such rights.” Cases in many jurisdictions use this detrimental connotation when dealing with the word “affect”.
We also accept the legal principle that legislative acts are presumed to be constitutional unless such are in direct conflict with this basic law, and the burden rests heavily upon a court to hold valid and constitutional a statute where it does not impinge upon or conflict with the meaning of the constitutional language.
In line with the foregoing we are inclined to hold that the word “affect” as used in Sec. 40 of Art. 7 of the 1921 Constitution is legally defined in its detrimental connotation as set forth in the quotations from Ballatines and Words and Phrases hereinabove, and, therefore, the adjustment of judicial salaries is controlled by the provision of Sec. 34 of Art. 3 of the 1921 Constitution, though the latter appears under the head “Legislative Department”. Irrespective of whether or not this ruling on the legal definition of the word “affect,” with the only substantial result being that a sitting judge can collect a legislative salary raise during his incumbency, is jur-isprudentially supported, we further hold that the drafters of the Constitution of 1921 did not intend or envision that the language used in Sec. 40 of Art. 7 should be interpreted in such a manner that judges elected or appointed after the adoption of a legislative pay raise could collect the raise, and their elders in service could not do so until their terms had expired.
We agree with the trial judge and hold Acts 24, 25 and 26 of 1970 valid and constitutional. The judgment of the Trial Court will therefore, be affirmed at plaintiffs’ costs.
Affirmed.